1-99-0733
 
FIRST DIVISION

December 26, 2000

THE PEOPLE OF THE STATE OF ) Appeal from the 

ILLINOIS, ) Circuit Court of

) Cook County.

Plaintiff-Appellee )

)

) No. 94 CR 12774

)

FREDERICK KIZER, ) The Honorable

) Michael P. Toomin,

Defendant-Appellant. ) Judge Presiding.

JUSTICE COHEN delivered the opinion of the court:

BACKGROUND

In 1995, a jury convicted the defendant of one count of first degree murder, three counts of attempted murder and two counts of aggravated battery.  The trial court sentenced the defendant to consecutive terms of 50 years for first degree murder and terms of 25, 15 and 10 years for the attempted murder counts.  We affirmed the convictions on direct appeal.  
People v. Kizer
, No. 1-95-3562 (1997) (unpublished order under Supreme Court Rule 23).

The defendant then challenged his convictions under the Post-Conviction Hearing Act (725 ILCS 5/122-1 
et
 
seq.
 (West 1998)).   The court reviewed the defendant's petition and dismissed it as frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 1998).

The defendant appealed from the dismissal of his postconviction petition.  In his appeal, the defendant for the first time challenged the propriety of his sentence, arguing that the trial court erred in making his sentences consecutive rather than concurrent.

This court initially disposed of the appeal in an unpublished order.  The defendant filed a petition for rehearing.  The order was withdrawn in order to allow consideration of this motion, which is taken with the case.  We deny the petition for rehearing.

ANALYSIS

In his 
pro
 
se
 postconviction petition, the defendant challenged the sufficiency of the evidence and alleged that his counsel was ineffective, that the trial court demonstrated bias against him and that the prosecution engaged in improper closing argument.  He also alleged that his appellate counsel was ineffective for failing to raise these issues on direct appeal.   In this appeal, he contests the propriety of his 10-year and his 15-year consecutive sentences.  He acknowledges that this issue was raised neither on direct appeal nor in his 
pro
 
se
 petition, but argues that the sentences may nonetheless be attacked at any time because they did not conform to a statutory requirement and therefore are void. 
People v. Arna
, 168 Ill. 2d 107, 113 (1995). In a supplemental brief, the defendant contends that the law under which he was sentenced has been rendered unconstitutional by the United States Supreme Court decision in 
Apprendi v. New Jersey
, 530 U.S. __, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  As a result, he argues, his consecutive sentences are void and must be modified to run concurrently.

I

The defendant shot at William and Kevin Richardson.  He missed William Richardson, but hit Kevin Richardson in the shoulder.  The bullet broke Kevin Richardson's arm.  For these attempted murders the trial court imposed 10-year and 15-year consecutive sentences.

The imposition of concurrent and consecutive sentences is governed by section 5-8-4(a) of the Uniform Code of Corrections (Code) (730 ILCS 5/5-8-4(a) (West 1998)). That section provides in pertinent part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, *** in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5-8-4(a) (West 1998).

In 
People v. Whitney
, 188 Ill. 2d 91, 96 (1999), the Illinois Supreme Court construed this statutory provision to require consecutive sentencing where a defendant is convicted of either a Class X or a Class 1 felony and inflicted severe bodily injury to the victim of that felony.

The State concedes that William Richardson was not injured and, therefore, that the consecutive sentence for the defendant's attempt to murder him is void under 
Whitney
.  Accordingly, the State acknowledges that waiver does not bar the defendant's present claim (
Arna
, 168 Ill. 2d at 113) and that his 10-year sentence should run concurrently with the other sentences.  We agree.  The State does not concede, however, that the consecutive term for the attempted murder of Kevin Richardson was improper.

The attempted murder of Kevin Richardson was 
 the triggering conviction for the imposition of the 15-year consecutive sentence under 
Whitney
.  Attempted murder is a Class X felony, which satisfies the first element of the consecutive sentencing statute.  
People v. Biggs
, 294 Ill. App. 3d 1046, 1053 (1998).  Kevin Richardson's fractured arm from the gunshot wound provided the second element: severe bodily injury.  
Biggs
, 294 Ill. App. 3d at 1053.  The defendant contends, however, that Kevin Richardson's injury was not sufficiently grave to qualify as "severe bodily injury" under the sentencing statute.

The State asserts that the defendant has waived this issue because he failed to file a motion to reconsider sentence or raise the issue either on direct appeal or in his 
pro
 
se
 postconviction petition.  

A postconviction proceeding is not an appeal of the underlying judgment but, rather, a collateral proceeding where the defendant may challenge a conviction or sentence for violations of constitutional rights.  
People v. Johnson
, 183 Ill. 2d 176, 186 (1998).  Any claim of substantial denial of constitutional rights that was not raised in the original or in an amended petition is waived.  725 ILCS 5/122-3 (West 1998).  In addition, the court's ruling on a postconviction petition has 
res
 
judicata
 effect as to all claims raised in the petition as well as those that could have been raised.  
People v. Flores
, 153 Ill. 2d 264, 274 (1992).  The same principles apply to those issues that were or could have been raised on direct appeal.  
Johnson
, 183 Ill. 2d at 186.

In this case, the facts relating to the sentence for the attempted murder of Kevin Richardson appear in the original appellate record and therefore could have been raised on direct appeal or in the defendant's postconviction petition.  Because the defendant wholly failed to raise the issue in the circuit court (see 
People v. Davis
, 156 Ill. 2d 149, 163 (1993)), he has waived it for purposes of appellate review.  
Flores
, 153 Ill. 2d at 274; see also 
People v. Martin
, 289 Ill. App. 3d 367, 371 (1997).  Moreover, plain error may not be invoked in postconviction proceedings to save procedurally defaulted claims (
Davis
, 156 Ill. 2d at 159), and for the reasons that follow, we find that the 15-year sentence was not void so as to preclude application of the waiver rule to his present claim.

The trial court had jurisdiction of the parties and the subject matter, as well as the authority to sentence the defendant to consecutive terms.  Thus, any error as to whether Kevin Richardson's injury was sufficient to satisfy the bodily injury requirement of the sentencing statute rendered the judgment voidable, rather than void, and therefore not subject to collateral attack.  
Davis
, 156 Ill. 2d at 156-58.  We therefore conclude that the defendant may not avoid application of the waiver rule to this claim. 

II

In a supplemental brief, the defendant contends that 
Apprendi
 renders section 5-8-4(a) of the Code unconstitutional and that his consecutive sentences imposed under that statute are therefore void and must be modified to run concurrently.  He maintains that this is so because severe bodily injury was a factor that increased the penalty for his crimes but was not pleaded and proved beyond a reasonable doubt.

The defendant in 
Apprendi v. New Jersey
, 530 U.S. __, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), was arrested for firing several shots into the home of an African-American family that had moved into a previously all-white neighborhood.  Pursuant to a plea agreement, the defendant pled guilty to second degree possession of a firearm for an unlawful purpose, a crime carrying a sentencing range of 5 to 10 years.  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at __, 120 S. Ct. at 2351.  The prosecution asked the judge to sentence the defendant under the New Jersey "hate crime" law, which provided for an extended term of imprisonment (in this case 10 to 20 years) if the judge found by a preponderance of the evidence that the defendant acted with the purpose to intimidate an individual based on race, color, gender, handicap, religion sexual orientation or ethnicity.  The judge imposed such a sentence (12 years) finding that the defendant had acted with a purpose to intimidate because of race.

The United States Supreme Court ruled that the New Jersey statutory scheme violated the defendant's due process rights.  The Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.  Because the defendant's sentence had been extended beyond the statutory maximum based on a factor found by only a preponderance of the evidence, his sentence under the hate crime statute was unconstitutional.

 
People v. Clifton
, Nos. 1-98-2126, 1-98-2384 cons. (September 29, 2000), applied 
Apprendi
 to section 5-8-4(a) of the Uniform Code of Corrections (730 ILCS 5-8-4(a) (West 1998)).  The court held section 5-8-4(a) unconstitutional under 
Apprendi
, because the provision permitted a court to impose consecutive sentences based on a finding (
i.e.
, severe bodily injury) not submitted to a jury or proved beyond a reasonable doubt.  In reaching that conclusion, the court found that the practical effect of section 5-8-4(a) was to extend the range of sentences to which a defendant may be exposed for a given course of conduct and, accordingly, that "[i]f consecutive sentences are to be imposed pursuant to a factual finding that severe bodily injury occurred, then severe bodily injury will have to be submitted to a jury and proved beyond a reasonable doubt."  
Clifton
, slip op. at 53-55.  

However, in 
People v. Sutherland
, No. 1-98-3802 (December 1, 2000), another division of the First District of the Appellate Court found that section 5-8-4(a) did not violate 
Apprendi
.  The 
Sutherland
 court reasoned that a finding mandating consecutive sentences under 5-8-4(a) did not actually extend the sentence beyond the prescribed statutory maximum as in 
Apprendi
.  
Sutherland
, slip op. at 18.

In the instant case, the defendant argues that, under 
Apprendi
 and 
Clifton
, it was unconstitutional for the trial judge to make his sentences consecutive rather than concurrent based on a finding that he inflicted severe bodily injury, since this question was not submitted to a jury or proved beyond a reasonable doubt.  

The issue now confronting this court is whether the 
Apprendi
 rule applies retroactively to cases on collateral review under the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1 
et
 
seq.
 (West 1998)).  The retroactivity of 
Apprendi
 is a threshold question that we address prior to proceeding to the merits of the defendant's claim or analyzing the question of whether 5-8-4(a) does in fact violate 
Apprendi
.  
Teague v. Lane
, 489 U.S. 288, 300, 103 L. Ed. 2d 334, 349, 109 S. Ct. 1060, 1070 (1989). 

The first Illinois court to address the retroactivity of 
Apprendi
 was the circuit court of St. Clair County in Hill v. Cowan, No. 82-CF-09 (2000).  The court decided that 
Apprendi
 applied retroactively to cases on collateral review and, therefore, granted relief to the petitioner. 
 Eleven days after 
Hill
 was decided, the appellate court handed down 
Clifton
.  The 
Clifton
 court opined in a footnote that 
Apprendi
 would not be retroactively applicable to cases on collateral review under the Post-Conviction Hearing Act. 
Clifton
, slip op. at 51 n. 3.  

We first decided the instant case as an unpublished order under Supreme Court Rule 23.  155 Ill. 2d R. 23.  In that order, we agreed with 
Clifton
 and found that 
Apprendi
 was not to be retroactively applied to postconviction hearings.  Two days later, another division of this court decided 
People v. Beachem
, No. 1-99-0852 (November 8, 2000).  In a thoughtful opinion by Justice Wolfson, the court held that 
Apprendi
 should be retroactively applied on collateral review.

The office of the State's Attorney then filed a motion requesting that we publish our disposition of the instant case.  Our views on retroactive application of 
Apprendi
 in postconviction proceedings have not changed.  We decided to publish an opinion in order to clarify the reasons for our views and hopefully help to focus the dispute on this critical and undeniably thorny issue.

III

As a general proposition, the United States Constitution neither mandates nor prohibits the retroactive application of new constitutional rules on collateral review. 
Linkletter v. Walker
, 381 U.S. 618, 629, 14 L. Ed. 2d 601, 608, 85 S. Ct. 1731, 1737 (1965).  The United States Supreme Court spoke to the issue of retroactive application of new constitutional rules on collateral review in 
Teague v. Lane
.  Prior to 
Teague
, the Court used a decidedly 
ad
 
hoc
 approach to retroactivity, evaluating in each case "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." 
Stovall v. Denno
, 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 1203, 87 S. Ct. 1967, 1970 (1967). In a series of dissents, Justice Harlan criticized this approach as inequitable in application and insensitive to the Court's institutional role.  He suggested instead an approach that focused on the procedural posture of the case.  Justice Harlan recommended that a new constitutional rule should always be applied retroactively to cases on direct review, but should never be applied retroactively on 
habeas
 
corpus
 review, barring exceptional circumstances.  The 
Teague
 plurality expressly adopted Justice Harlan's views on this subject. 
Teague
, 489 U.S. at 310, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075.   

Justice Harlan formulated the basic policy adopted by 
Teague
 after a careful balancing of competing interests in light of the Court's adjudicatory role and the purpose of the postconviction proceeding. See 
Mackey v. Unites States
, 401 U.S. 667, 688-89,  28 L. Ed. 2d 404, 418, 91 S. Ct. 1160, 1178 (1971) (Harlan, J., dissenting in part and concurring in part).  The purpose of collateral proceedings such as 
habeas
 
corpus
, Justice Harlan reasoned, is to ensure that state courts "toe the constitutional mark" and in good faith attempt to conform to constitutional standards as understood. 
Teague
, 489 U.S. at 306-07, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073. Overturning cases based on law announced at a later date would do nothing to further that purpose
. "'In order to perform this deterrence function, . . . the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place.'" 
Teague
, 489 U.S. at 306, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073, quoting 
Desist v. United States
, 394 U.S. 244, 262-63, 22 L. Ed. 2d 248, 263, 89 S. Ct. 1030, 1041 (1969) (Harlan, J., dissenting).

Justice Harlan recognized that the body responsible for defining the scope of a postconviction remedy had some leeway in striking the balance among the relevant interests when it made its decision on a retroactivity rule.

"'The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed.'"  
Teague
, 489 U.S. at 306, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073, quoting 
Mackey
, 401 U.S. at 683, 28 L. Ed. 2d at 415, 91 S. Ct. at 1175 (Harlan, J., dissenting in part and concurring in part). 

Teague
 concerned federal 
habeas
 
corpus
 proceedings and not state postconviction proceedings.  The decision concerning retroactivity in the latter context is for the government of the relevant state, which has the ultimate responsibility to balance--in the context of its own postconviction proceeding law--the policies and concerns identified by Justice Harlan in the context of 
habeas
 
corpus
. See, 
e.g.
, 
Daniels v. State
, 561 N.E.2d 487, 489 (Ind. 1990).

Teague
 sets out a three-step process for deciding the applicability of a new rule on collateral review
.  
O'Dell v. Netherland
, 521 U.S. 151, 156, 138 L. Ed. 2d 351, 358, 117 S. Ct. 1969, 1973 (1997).  First, the court determines the date upon which the defendant's conviction became final.  "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."  
Caspari v. Bohlen
, 510 U.S. 383, 390, 127 L. Ed. 2d 236, 246, 114 S. Ct. 948, 953 (1994).

Second, the court determines whether the constitutional rule sought by the defendant existed when the conviction became final.  
O'Dell
, 521 U.S. at 156, 138 L. Ed. 2d at 358, 117 S. Ct. at 1973. If the rule existed at the time the defendant's conviction became final, it is not a new rule.  In that case the rule is applied on collateral review, since it is the law that should have been utilized in the first place. 
 If the rule sought by the defendant is new, however, it is generally not to be applied on collateral review.  According to the 
Teague
 plurality, "a case announces a new rule if the result was not 
dictated
 by precedent existing at the time the defendant's conviction became final." (Emphasis in original.) 
Teague
, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070.  This is a very broad conception of a new rule, as Justice Brennan noted in his 
Teague
 dissent: 

"Few decisions on appeal or collateral review are '
dictated
' by what came before.  Most such cases involve a question of law that is at least debatable, permitting a rational judge to resolve the case in more than one way.  Virtually no case that prompts a dissent on the relevant legal point, for example, could be said to be '
dictated
' by prior decisions." (Emphasis in original.) 
Teague
, 489 U.S. at 333, 103 L. Ed. 2d at 371, 109 S. Ct. at 1088 (Brennan, J., dissenting, joined by Marshall, J.).

In another case, the Court indicated that a rule could be considered new if there had been a significant difference of opinion on the issue in the lower courts before the rule was established.  
Butler v. McKellar
, 494 U.S. 407, 415, 108 L. Ed. 2d 347, 356-57, 110 S. Ct. 1212, 1217-18 (1990).

Third, 
Teague
 directs that if the rule is new, the court must determine whether it falls within one of two narrow exceptions to the 
Teague
 doctrine. 
O'Dell
, 521 U.S. at 156-57, 138 L. Ed. 2d at 358, 117 S. Ct. at 1973.  Unless one of the exceptions applies, the new rule should not be utilized on collateral review.  

The first of these narrow exceptions applies if the rule in question places an entire category of primary conduct beyond the reach of the criminal law.  
Sawyer v. Smith
, 497 U.S. 227, 241,  111 L. Ed. 2d 193, 211, 110 S. Ct. 2822, 2831 (1990). The second, even more circumscribed exception applies if the new rule requires the observance of those procedures that are implicit in the concept of ordered liberty. 
O'Dell
, 521 U.S. at 157, 138 L. Ed. 2d at 358, 117 S. Ct. at 1973.  This exception involves "watershed" rules of criminal procedure that are necessary to the fundamental fairness of a criminal proceeding. 
Sawyer
, 497 U.S. at 241-42, 111 L. Ed. 2d at 211, 110 S. Ct. at 2831.  To qualify for retroactive application under this exception, a rule must be aimed at improving the accuracy of trial and be of such importance that it alters our understanding of the bedrock procedural elements essential to a fair trial. 
Sawyer
, 497 U.S. at 242, 111 L. Ed. 2d at 211, 110 S. Ct. at 2831.

Teague
's analysis applies to retroactivity in federal 
habeas
 
corpus
 proceedings.  Retroactivity under the Illinois Post-Conviction Hearing Act is a matter of state law, for which Illinois may fashion its own standard within broad constraints. See 
People v. Flowers
, 138 Ill. 2d 218, 237 (1990); M. Hutton, 
Retroactivity in the States: The Impact of Teague v. Lane on State Postconviction Remedies
, 44 Ala. L. Rev. 421 (1993).  However, in 
People v. Flowers
, 138 Ill. 2d at 237, the Illinois Supreme Court decided to adopt as the standard for retroactivity of new rules under the Post-Conviction Hearing Act the same standard as that annunciated in 
Teague
 for retroactivity in 
habeas
 
corpus
 proceedings
.  Accordingly, we now apply the 
Teague
 analysis to the instant case.  

Step One: The defendant's convictions became final in 1997.  
Apprendi
 was decided in 2000.  

Step Two: We believe that the rule of 
Apprendi
 was not dictated by prior precedent.  
Apprendi
 was decided over a strong dissent.  Moreover, before the Court decided 
Apprendi
, lower courts certainly had not agreed that an 
Apprendi
-like rule
 was the law.  Thus, we maintain 
Apprendi
 is a new rule for the purposes of retroactivity analysis.

Step Three: The first 
Teague
 exception is not relevant in this case, because 
Apprendi
 did not place the actions for which the defendant was sentenced beyond the reach of the criminal law.  The state's authority to punish the defendant for attempted murder is beyond question. 
Jones v. Smith
, No. 99-56405, slip op. at 9 (9th Cir. November 7, 2000).

The defendant urges, however, that the rule of 
Apprendi
 qualifies for retroactive application on collateral review under the second 
Teague
 exception.

Indeed the retroactivity of 
Apprendi
 does turn on the interpretation of this exception.  As the Supreme Court has acknowledged, the precise contours of the second 
Teague
 exception may be difficult to delimit.  
Saffle v. Parks
, 494 U.S. 484, 495, 108 L. Ed. 2d 415, 429, 110 S. Ct. 1257, 1264 (1990). Nevertheless, "[t]he scope of the 
Teague
 exceptions must be consistent with the recognition that '[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.'" 
Sawyer
, 497 U.S. at 242, 111 L. Ed. 2d at 211, 110 S. Ct. at 2381, quoting 
Teague
, 489 U.S. at 309, 103 L. Ed. 2d at 355, 109 S. Ct. at 1074.

 It is clear the rule in 
Apprendi
 was aimed at improving the accuracy of the criminal proceeding, as required by the second exception.  Further, it cannot be disputed that the majority in 
Apprendi
 (as well as the dissenters) saw the rule being announced as important.  "At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6."  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355.  Yet the crucial question remains to be answered.  Did 
Apprendi
 alter our understanding of the bedrock procedural elements essential to a fair trial? 

Federal cases have taken differing views on whether the  
Apprendi
 rule is sufficiently fundamental to be retroactively applicable in 
habeas
 
corpus
 proceedings under the second 
Teague
 exception.  In 
United States v. Murphy
, 109 F. Supp. 2d 1059 (D. Minn. 2000), a district court found 
Apprendi
 could be retroactively applied under that
 exception.  The defendant in 
Murphy
 was convicted of possession of and conspiracy to distribute crack cocaine, along with related offenses.  Based upon a finding by the trial judge as to the type and quantity of narcotics possessed by the defendant, the judge imposed sentences totaling 30 years' imprisonment followed by 10 years' supervised release, in accord with the mandatory minimum sentences established by Congress.  Without such a finding the defendant would have been sentenced under a "catch-all" sentencing provision for narcotics crimes.  Under that provision there is no mandatory minimum and the maximum sentence is 20 years' imprisonment and 3 years' supervised release.  
Murphy
, 109 F.2d at 1061. 

On 
habeas
 
corpus
 review, the court found that 
Apprendi
 mandated that if the prosecution sought to subject a drug offender to an enhanced sentence, it would have to submit the questions of type and quantity of narcotics to the jury for a finding beyond a reasonable doubt.  The court further found that this new rule was "so grounded in fundamental fairness that it may be considered of watershed importance" and thus came under the second 
Teague
 exception.   
Murphy
, 109 F.2d at 1064.

In 
Jones v. Smith
, No. 99-56405 (9th Cir. November 7, 2000), the Ninth Circuit declined to give 
Apprendi
 retroactive application for 
habeas
 
corpus
 under the second 
Teague
 exception.  A jury convicted the defendant in 
Jones
 of attempted murder with premeditation, and he was sentenced to life in prison.  However, premeditation was not alleged in the charging instrument.  The element of premeditation made a great difference in the range of potential sentences.  The court noted that this error might violate 
Apprendi
. 
Jones
, slip op. at 7-8.  According to 
Apprendi
, the fourteenth amendment commands that "any fact (other than prior conviction) that increases the maximum penalty for a crime 
must be charged in an indictment
, submitted to a jury, and proven beyond a reasonable doubt."  (Emphasis added.)  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 446, 120 S. Ct. at 2355. See also 
United States v. Aguayo-Delgado
, 220 F.3d 926, 933 (8th Cir. 2000); 
United States v. Cavender
, 228 F.3d 792, 804 (7th Cir. 2000).  The 
Jones
 court found that this new constitutional rule
 was not an absolute prerequisite to a fair trial and that the second exception therefore did not apply. 
Jones
, slip op. at 9.

While an attempt to limit 
Jones
 to its facts could be made by pointing out that in 
Jones
 the defendant, regardless of the allegedly defective charging instrument, had actual notice of the nature of the accusation against him and the range of possible sentences (
Jones
, slip op. at 9), under 
Teague
, such an exercise is beside the point. 
Teague
 represents a rejection of the
 case-by-case approach to retroactivity. "
Teague
 forces courts to choose between complete retroactivity and non-retroactivity; there is no room for a selective approach that would only benefit defendants whose trials were probably inaccurate." E. Boshkoff, 
Resolving Retroactivity After Teague v. Lane
, 65 Ind. L. J. 651, 658 (1990). Retroactivity of a proposed rule is a threshold question that must be decided before the merits of a defendant's claim.  
Teague
, 489 U.S. at 300, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070.  The 
Jones
 court had to decide the retroactivity of the new constitutional rule in 
Apprendi
 before it could consider whether the defendant's specific situation represented a violation of that rule.

IV

As noted above, 
Flowers
 adopts 
Teague
.  But as can be easily ascertained from the catalogue of cases cited above, 
Teague
, especially the second exception, is susceptible to divergent interpretations.  Ultimately, however, we believe that it is the second 
Teague
 exception 
as understood by the court in Flowers
 that controls.  As this is a matter of state law, and in light of the conflicting authority at the federal level, we must ultimately take our direction from the Illinois Supreme Court and its view of the scope of the second 
Teague
 exception in 
Flowers
.  

First, we note that  
Flowers
 cautions that Illinois courts are to construe the second exception narrowly. 
Flowers
, 138 Ill. 2d at 242.

Now we examine how 
Flowers
 applied the second exception to the facts before it.  
Flowers
 found that a new constitutional rule of criminal procedure, set out in 
People v. Reddick
, 123 Ill. 2d 184 (1988), did not qualify for retroactive application under the second exception. 
Flowers
, 138 Ill. 2d at 242.  Although 
Reddick
 was decided on state law grounds, 
Flowers
 held that the error identified in 
Reddick
 was of constitutional dimension.  
Flowers
, 138 Ill. 2d at 237; accord 
Falconer v. Lane
, 905 F.2d 1129, 1134 (7th Cir. 1990)
. 

In 
People v. Reddick
, 123 Ill. 2d 184 (1988), the court was presented with consolidated appeals from two murder convictions.  At trial, each of the defendants admitted that he had killed the victim, but argued (unsuccessfully) that he was guilty of manslaughter rather than murder due to some mitigating mental state.  On appeal, the defendants contended that improper jury instructions regarding the elements of murder and manslaughter compelled reversal of their convictions. 

The 
Reddick
 court held that the instructions, when given together, misallocated the appropriate burdens of proof. 
Reddick
, 123 Ill. 2d at 194; 
People v. Shields
, 143 Ill. 2d 435, 442 (1991).  The instructions placed the responsibility of proving the mitigating circumstances that would reduce murder to manslaughter on the State.  Of course, it is unlikely that the State would attempt to prove that a defendant was guilty only of manslaughter rather than murder if it charged the defendant with murder.

In a later case the Illinois Supreme Court described the 
Reddick
 holding as follows:

"In 
Reddick
, this court held that the Illinois pattern jury instructions regarding murder and voluntary manslaughter, used by the trial court at the 
Reddick
 defendants' trials, incorrectly advised the jury that it was the State's burden to 
prove
 one of the mitigating mental states that would reduce murder to voluntary manslaughter.  This court determined that the instructions should have told the jury that it was the State's burden to 
disprove
 the pertinent mitigating mental states." (Emphasis in original.) 
People v. Salazar
, 162 Ill. 2d 513, 518 (1994).

Reddick
 held that the prosecution should be required to disprove the mitigating mental states beyond a reasonable doubt once the defendant had presented sufficient evidence to raise the issue. 
Reddick
, 123 Ill. 2d at 197. 

We disagree with our colleagues' conclusion in 
Beachem
 that 
Reddick
, "did not implicate the right to a jury verdict beyond a reasonable doubt and, consequently, the fundamental fairness and accuracy concerns inherent in the second 
Teague
 exception." 
Beachem
, slip op. at 19.  
Reddick
 found that the instructions did nothing less than "essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter [instead of murder]." 
Reddick
, 123 Ill. 2d at 194-95. 

Flowers
 held that 
Reddick
 announced a rule of constitutional dimension, involving the right to have the jury adequately apprised of the relevant law.  
Flowers
, 138 Ill. 2d at 237.  Instructions that do not adequately apprise the jury of the law may be more or less harmful depending on the nature of the misinformation.  The nature of the  misinformation involved in the 
Reddick
 instructions, that court concluded, was that "the jury was not apprised of the People's burden of proof." 
Reddick
, 123 Ill. 2d at 198. The court observed that it had previously held that "certain instructions, such as the burden of proof and elements of the offense, are 
essential to a fair trial
." (Emphasis added.) 
Reddick
, 123 Ill. 2d at 198. And though 
Reddick
 was decided on state law grounds, the United States Supreme Court has emphatically made clear that instructions misstating the burden of proof in a criminal trial may violate due process and even the right to trial by jury.  
Sullivan v. Louisiana
, 508 U.S. 275, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993).  Accordingly, we think that 
Reddick
 did implicate the right to a jury verdict beyond a reasonable doubt.

Reddick
 cannot be distinguished from cases such as 
Sullivan
 on the basis that it dealt with whether the defendant's offense was murder or manslaughter instead of whether the defendant was guilty of anything at all. "[C]riminal law 'is concerned not only with guilt or innocence in the abstract, but also with the degree of criminal culpability' assessed." 
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 452, 120 S. Ct. at 2360, quoting 
Mullaney v. Wilbur
, 421 U.S. 684, 697-98, 44 L. Ed. 2d 508, 519, 95 S. Ct. 1881, 1889 (1975).  The distinction between murder and manslaughter may be of greater importance than the difference between guilt or innocence for many lesser crimes. 
Mullaney
, 421 U.S. at 698, 44 L. Ed. 2d at 519, 95 S. Ct. at 1889. 

Federal 
habeas
 
corpus
 courts have, under the second 
Teague
 exception, given retroactive application to 
Sullivan
 and related cases that held that erroneous instructions in criminal trials violated the constitution. See, 
e.g.
,  
Harmon v. Marshall
, 69 F.3d 963 (9th Cir. 1995); 
Adams v. Aiken
, 41 F.3d 175 (4th Cir. 1994); 
Gaines v. Kelley
, 202 F.3d 598 (2d Cir. 2000). This merely serves to underscore how narrowly 
Flowers
, which declined to make retroactive a similar holding, understood the second exception.

The burden of proof problem in 
Reddick
 exposed defendants to the danger of deprivations just as unfair
 as any deriving from the 
Apprendi
 problem.  In 
Apprendi
 the Court was concerned that the defendant was being sentenced to what amounted to a greater crime rather than a lesser on the basis of a factor found by merely a preponderance of the evidence rather than beyond a reasonable doubt.  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 451, 120 S. Ct. at 2359.  In 
Reddick
, however, the court found that the instructions made it not just less likely, as the lower standard of proof made it in 
Apprendi
, but 
impossible
 for a finder of fact following the burden of proof instructions to find the defendant guilty of the lesser crime rather than the greater. 
Reddick
, 123 Ill. 2d at 194-95.

We do not mean to suggest that the very same situation was presented in 
Apprendi
 as in 
Reddick
.  But clearly 
Reddick
 and 
Apprendi
 deal with similar concerns, and concerns that, in our view, are of commensurate gravity.  Yet the Illinois Supreme Court found that the 
Reddick
 rule was not sufficiently fundamental to qualify under the second 
Teague
 exception.  

Thus, since the Illinois Supreme Court in adopting 
Teague
 balanced the policy concerns in such a way that the second exception did not apply to 
Reddick
, we believe that the exception also does not apply to 
Apprendi
.  Because we hold that 
Apprendi
 should not be  retroactively applied under the Post-Conviction Hearing Act, the defendant's sentence was not unconstitutional at the time that it was entered, regardless of whether it would be unconstitutional if entered now.  Since we find that 
Apprendi
 does not apply retroactively to cases on collateral review, we need not further address the merits of the defendant's claim as to the sentence for the attempted murder of Kevin Richardson.  The 10-year consecutive sentence for the attempted murder of William Richardson is hereby modified to run concurrently with the other sentences. 

Affirmed as modified. 

McNULTY, P.J., and O'MARA FROSSARD, J., concur.