FIFTH DIVISION

                                                 January 24, 2003 

No. 1-00-3452

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

JAMES TURNER,

Defendant-Appellant.

))))) ))))

)

Appeal from the

Circuit Court of

Cook County

Honorable

Fred G. Suria,

Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

In 1984, following a jury trial, defendant, James Turner, was convicted of murder and sentenced to 40 years in prison.  On May 2, 1986, defendant's conviction and sentence were affirmed by this court on direct appeal.  
People v. Turner
, 143 Ill. App. 3d 417 (1986).

On June 1, 1995, defendant filed a 
pro se
 postconviction petition.  The trial court appointed counsel on June 19, 1995.  On March 29, 2000, defendant's appointed counsel filed an amended postconviction petition.  On September 14, 2000, the trial court dismissed the amended petition without an evidentiary hearing.

On appeal, defendant argues that dismissal of his postconviction petition without an evidentiary hearing was improper where the allegations in the petition made a substantial showing of a constitutional violation.

For the reasons that follow, we affirm the decision of the trial court.

I.  BACKGROUND

On January 13, 1984, defendant was convicted of murder.  Defendant's conviction arose from the death of Roy Peterson.  Briefly, the facts adduced at the jury trial established that defendant was indicted along with a codefendant, Eleanor Peterson, for the beating, strangling and scalding murder of Eleanor's husband Roy.  The events transpired over a 24-hour period, culminating in Roy's death in the early morning hours of August 12, 1983.  In 
People v. Turner
, 143 Ill. App. 3d 417, we set forth in detail the facts supporting defendant's conviction and sentence.  To the extent that facts contained in that opinion pertain to the issues defendant raises in his petition, we will repeat them as we consider each issue.

On June 1, 1995, defendant filed a 
pro se
 postconviction petition. The petition asserted defendant's arrest was unconstitutional and that his confession was involuntary.  On June 19, 1995, the trial court appointed counsel to represent defendant.  On June 21, 1995, the State moved to dismiss the petition on the grounds that it was untimely, barred by 
res judicata
, and failed to make a substantial showing of a constitutional violation.  The record does not reflect, nor has either party provided, a ruling on that motion.

On March 29, 2000, defendant's counsel filed a document entitled "supplemental petition."  The supplemental petition did not contain the original postconviction petition allegations.  The supplemental petition alleged that defendant was denied his constitutional right to decide whether to tender a jury instruction for the lesser-included offense of involuntary manslaughter.  On June 1, 2000, the State moved to dismiss the petition alleging the petition was untimely and failed to make a substantial showing of a constitutional violation.

On September 14, 2000, the trial court, following argument by the parties, dismissed the petition.  The court noted:

"There is no question that the statute of limitations will dispose of this case ***.  I will not dismiss it on the basis of the statute of limitations.  I will say that I will consider it, whether or not there should have been tendered an involuntary murder instruction.  In that regard, happily, for the purpose of this ruling, I was the trial judge. *** In light of all the attendant circumstances, I would in fact respectfully dismiss the petition based upon the fact that notwithstanding there is a valid motion under the statute of limitations argument by the State, I am dismissing it.  In point of fact, even if I overlooked that and said he didn't know until he had counsel to review the transcripts and file the supplemental petition, that I would not have, under any circumstances in this case, given the instruction, even if tendered, on the voluntary [
sic
] manslaughter."

Defendant now appeals from that dismissal.

II.  ANALYSIS

Defendant argues that dismissal of his supplemental postconviction petition without an evidentiary hearing was improper where his allegation made a substantial showing of a constitutional violation.  Specifically, defendant argues that although the facts developed at his jury trial warranted an instruction on the lesser-included offense of involuntary manslaughter, his trial attorney decided not to tender a jury instruction on involuntary manslaughter.  Defendant maintains that the decision whether to request an instruction on a lesser-included offense was a fundamental personal decision, and therefore he was deprived of this constitutional right.

A.  Timeliness

Initially, the State responds that defendant's 
pro se
 petition, filed eight years past the statutory deadline, and his amended "supplemental" petition, filed five years after that, should be dismissed where they are untimely.  We agree.

The Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 
et seq
. (West 1994)) provides a mechanism by which criminal defendants can assert that their convictions and sentences were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. See 725 ILCS 5/122-1 (West 1994).  An action for postconviction relief is a collateral proceeding and is not an appeal from the underlying conviction and sentence.  
People v. Mahaffey
, 194 Ill. 2d 154, 170 (2000).  In order to be entitled to postconviction relief, a defendant bears the burden of establishing a substantial deprivation of federal or state constitutional rights in the proceedings that produced the judgment being challenged.  
People v. Morgan
, 187 Ill. 2d 500, 528 (1999).

The Act provides a three-stage process for the adjudication of postconviction petitions.  In the first stage, the circuit court determines whether the postconviction petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 1994).  The State does not have an opportunity to raise any arguments against the petition during this summary review stage.  
People v. Gaultney
, 174 Ill. 2d 410 (1996).  The circuit court is required to make an independent assessment in the summary review stage as to whether the allegations in the petition, liberally construed and taken as true, set forth a constitutional claim for relief.  
People v. Coleman
, 183 Ill. 2d 366 (1998). To survive dismissal at this stage, the petition must only present " 'the gist of a constitutional  claim.' "  
People v. Edwards
, 197 Ill. 2d 239, 244 (2001), quoting 
Gaultney
, 174 Ill. 2d at 418.

If the petition is found to be "frivolous" or "patently without merit," the court "shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision." 725 ILCS 5/122-2.1(a)(2) (West 1994).  If the petition survives the initial stage, the court may appoint counsel to represent an indigent defendant, and counsel will have an opportunity to amend the petition. 725 ILCS 5/122-1 
et seq
. (West 1994); 
People v. Watson
, 187 Ill. 2d 448 (1999).  The State then may file a motion to dismiss the petition. 725 ILCS 5/122-5 (West 1994); 
Gaultney
, 174 Ill. 2d at 418.  If the State does not file a motion to dismiss or if the circuit court denies the State's motion, the circuit court will proceed to the third stage and conduct an evidentiary hearing on the merits of the petition. 725 ILCS 5/122-6 (West 1994); 
People v. Boclair
, 202 Ill. 2d 89, 100 (2002).

Section 122-1 of the Act governs the limitations period on the institution of postconviction actions.  The legislature has twice amended section 122-1.  In this case, the controlling version of the statute is the version in effect on June 1, 1995, when the petition was filed
.  See 
People v. Bates
, 124 Ill. 2d 81, 84-86 (1988).  At that time, section 122-1 stated, in relevant part: 

"No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or issuance of the opinion from the Illinois Supreme Court or 6 months after the date of the order denying certiorari by the United States Supreme Court or the date for filing such a petition if none is filed or 3 years from the date of conviction, whichever is later, unless the petitioner alleges facts showing that the delay was not due to his culpable negligence." 725 ILCS 5/122-1 (West 1994).

The supreme court has recently held that the Act does not authorize the dismissal of a postconviction petition during the initial stage based on untimeliness.  
Boclair
, 202 Ill. 2d at 102.  The court concluded that the matter of untimeliness should be left for the State to assert during the second stage of the postconviction proceedings.  

In this case the State moved to dismiss the petition as untimely following the appointment of counsel, 
i.e.,
 at the second stage.  Pursuant to the controlling version of the statute, the right to file a postconviction action expired as soon as the later of any of the listed specified time periods had elapsed. In this case, the last such event to transpire was the expiration of three 

years after the date of defendant's sentencing on January 13, 1984.  Defendant's 
pro se
 postconviction petition was filed on June 1, 1995, over eight years past the January 13, 1987, deadline.  Accordingly, the action was commenced too late.  

In addition, we note that defendant has effectively abandoned the arguments contained in his 
pro se
 petition, and alleged an entirely new argument in his supplemental position.  If we were to consider the date defendant filed his "supplemental" petition, the petition which contains the argument before this court, defendant's petition, which was filed March 29, 2000, would be late by more than 13 years. 

Defendant argues that even if this court were to hold that defendant's petition was untimely, we should hold that the delay was not due to his culpable negligence.  Specifically, the claim advanced in defendant's supplemental petition was based upon the defendant's right to decide whether to tender a jury instruction on a lesser-included offense.  Defendant maintains that because Illinois did not recognize this personal right until October 20, 1994, when the supreme court handed down the decision in 
People v. Brocksmith
, 162 Ill. 2d 224 (1994), he should be excused for his delay in filing.  We disagree.

A petitioner who does not file his petition within the limitation period set forth in section 122-1 must show the "delay was not due to his culpable negligence."  725 ILCS 5/122-1 (West 1994). To show the absence of culpable negligence, a petitioner must allege facts justifying the delay.  
People v. Bates
, 124 Ill. 2d 81, 88 (1988).  A trial court's determination whether the delay was due to a defendant's culpable negligence will be reversed only if the determination is manifestly erroneous.  
People v. Caballero
, 179 Ill. 2d 205, 214 (1997); 
People v. Van Hee
, 305 Ill. App. 3d 333, 336 (1999).
  Lack of culpable negligence is very difficult to establish. 
 
People v. Burris
, 315 Ill. App. 3d 615, 617 (2000)
.

Defendant's argument is unavailing where 
Brocksmith
 does not apply retroactively to this case.  Decisions which announce "new rules" are not generally applied retroactively to cases pending on collateral review. 
People v. Gardner
, 331 Ill. App. 3d 358, 365 (2002).  A case establishes a "new rule" within the meaning of 
Teague v. Lane
, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989), if it " 'breaks new ground,' 'imposes a new obligation on the States or Federal Government,' or was not 'directed by precedent existing at the time the defendant's conviction became final. [Citation.]' " (Emphasis omitted.) 
Graham v. Collins
, 506 U.S. 461, 467, 122 L. Ed. 2d 260, 269, 113 S. Ct. 892, 897 (1993).  The majority in 
Brocksmith
 acknowledged that the supreme court had previously held that "the decision whether to tender a lesser included offense instruction involves matters of trial strategy.  (
People v. Barnard
, 104 Ill. 2d 218, 232 (1984); 
People v. Kubat
, 94 Ill. 2d 437, 485-86 (1983); [Citations].)"  
Brocksmith
, 162 Ill. 2d at 228.  

The district court in 
United States ex rel. Scott v. Illinois Department of Corrections
, No. 00-8230, (N.D. Ill., Jan. 12, 2001), recognized the holding in 
Brocksmith
 as establishing a new rule when it denied a habeas corpus petition asserting a violation of 
Brocksmith
.  The court stated:

"As for the substantive issue posed by Scott's first ground for relief, perhaps the most critical factor is that at the time of Scott's 1993 trial the established Illinois law was that such decisions were for counsel (and not for the defendant) to make as a matter of trial tactics and strategy.  (
People v. Ramey
, 152 Ill. 2d 41, 54 (1992)).  It was only later in 1994, during the pendency of Scott's direct appeal that the Illinois Supreme Court adopted the entirely different rule that the decision as to whether or not to tender an instruction on a lesser included offense belonged to the defendant himself or herself rather than to defense counsel.  (
People v. Brocksmith
, 162 Ill. 2d 224, 229-30 (1994)).

It would of course be absurd to hold that Scott's trial counsel had fallen below the 
Strickland
 threshold of adequate assistance because the lawyer did not have a crystal ball that would have anticipated such a fundamental change in Illinois law that did not come until the following year."  
Scott
, slip op. at 4-5.   

Under 
Teague
, a new constitutional rule of criminal procedure is not applied retroactively to cases that are final before the new rule is announced. 
Teague
, 489 U.S. at 310, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075.  There are two exceptions.  A new constitutional rule should be applied retroactively to cases pending on collateral review if the new rule either (1) places 

" 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe' " or (2) requires observance of those procedures that are implicit in the concept of ordered liberty.  
Teague
, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075-76, quoting 
Mackey v. United States
, 401 U.S. 667, 692, 28 L. Ed. 2d 404, 420, 91 S. Ct. 1160, 1180 (1971).   The first 
Teague
 exception has no application to this case.  In order for retroactive application to apply under the second 
Teague
 exception, a rule must be aimed at improving the accuracy of the trial and be of such importance that it alters our understanding of the bedrock procedural elements essential to a fair trial.  
People v. Kizer
, 318 Ill. App. 3d 238, 247 (2000), citing 
Sawyer v. Smith
, 497 U.S. 227, 242, 111 L. Ed. 2d 193, 211, 110 S. Ct. 2822, 2831 (1990). 

Teague
 was adopted by our supreme court in 
People v. Flowers
, 138 Ill. 2d 218, 237 (1990).  The second 
Teague
 exception is to be narrowly construed.  
People v. Kizer
, 318 Ill. App. 3d at 250.  The purpose of narrowly construing the second exception is to promote finality in criminal proceedings.  
Teague
, 489 U.S. at 309, 103 L. Ed. 2d at 355, 109 S. Ct. at 1074.  Indeed, the court in 
People v. Beachem
, 317 Ill. App. 3d 693, 702 n.4 (2000), pointed out that neither the United States Supreme Court nor the Illinois Supreme Court has ever found that a new rule qualifies for retroactive application under the second 
Teague
 exception.

There is no Illinois case directly on point on the issue of whether the holding in 
Brocksmith
 should be retroactively applied.  As well, we note that defendant fails to address this issue in his opening brief, nor does he respond to the State's argument in his reply brief. A review of cases addressing the retroactive application of new constitutional rules to cases on collateral review, reveals that the new criminal procedure rule announced in 
Brocksmith
 does not rise to the level of constitutional dimension contemplated under 
Teague
. In its ruling that the ultimate decision to tender a lesser-included offense instruction belongs to the defendant, the 
Brocksmith
 court relied upon the ABA Standards for Criminal Justice §4--5.2, Commentary, at 4-68 (2d ed. 1980) rather than the United States Constitution or the Illinois Constitution.  
People v. Brocksmith
, 162 Ill. 2d at 228.  Namely, the court relied on the comment:

"It is also important in a jury trial for the defense lawyer to consult fully with the accused about any lesser included offenses the trial court may be willing to submit to the jury. Indeed, because this decision is so important as well as so similar to the defendant's decision about the charges to which to plead, the defendant should be the one to decide whether to seek submission to the jury of lesser included offenses." 1 ABA Standards for Criminal Justice §4--5.2, Commentary, at 4-68 (2d ed. 1980).
  

However, section 4--5.2 has been subsequently revised.  The commentary following the current version of section 4--5.2 now states only:

"It is also important in a jury trial for defense counsel to consult fully with the accused about any lesser included offenses the trial court may be willing to submit to the jury."  ABA Standards for Criminal Justice §4--5.2, Commentary, at 10 (3d ed. 1993).

The more limited language of the revised commentary, coupled with the fact that neither version refers to a constitutional basis for the decision, supports a finding that defendant's due process rights are not implicated in the decision of whether to tender a lesser-included offense.

In 
Jones v. Barnes
, 463 U.S. 745, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983), the Supreme Court held that a defense counsel assigned to represent a defendant on a criminal appeal did not have a constitutional duty to raise every nonfrivolous issue requested by the defendant.  The defendant had argued that the ABA Standards for Criminal Appeals indicated that counsel should accede to a client's insistence on pressing a particular contention on appeal.  The Second Circuit Court of Appeals agreed with the defendant.  In reversing the court of appeals, the Supreme Court considered the ABA Model Rules of Professional Conduct, Proposed Rule 1.2(a) (Final Draft 1982), which provided that "In a criminal case, the lawyer shall abide by the client's decision *** as to a plea to be entered, whether to waive a jury trial and whether the client will testify."  The Court also considered the ABA Defense Function Standards, which provided that with the three above exceptions, "strategic and tactical decisions are the exclusive province of the [defense counsel] after consultation with the client."  ABA Standards of Criminal Justice §4-5.2(b) (2d ed. 1980).  The Supreme Court then held: "In any event, the fact that the ABA may have chosen to recognize a given practice as desirable or appropriate does not mean that the practice is required by the Constitution."  
Jones
, 463 U.S. at 753 n.6, 77 L. Ed. 2d at 995 n.6, 103 S. Ct. at 3314 n.6.  

We also find support in our supreme court's decision in 
People v. Flowers
, 138 Ill. 2d 218 (1990).  In 
Flowers
, the court declined to apply its decision in 
People v. Reddick
, 123 Ill. 2d 184 (1988), to cases pending on collateral review.  In 
Reddick
, the court held that the standard pattern jury instructions regarding the elements of murder and voluntary manslaughter were unconstitutional when given together because they misallocated the burden of proof.  This misallocation effectively precluded the jury from returning a verdict of voluntary manslaughter rather than murder.  
Reddick
, 123 Ill. 2d at 194-95.  In analyzing the 
Reddick
 rule, the 
Flowers
 court held that, while proper instructions are essential to a fair trial, the rule did not fall within the second exception of 
Teague
 because it did not establish "such a component of basic due process as to fall within it."  
Flowers
, 138 Ill. 2d at 242.  This decision certainly indicates the narrowness with which the supreme court interprets the second exception of 
Teague
.  See 
People v. Gholston
, 332 Ill. App. 3d 179, 183 (2002).    

We also find support in our supreme court's treatment of the new rules governing capital punishment cases.  Effective March 1, 2001, our supreme court has now adopted a comprehensive set of new rules governing the conduct of cases in which the State is seeking the death penalty. "The new rules clarify the duty of prosecuting attorneys, establish mandatory programs to improve the knowledge and skill of trial judges who may be called upon to preside over capital cases ***, extend criminal discovery rules to capital sentencing hearings *** and impose on the State a duty to make a good-faith effort to identify material or information which tends to negate the guilt of the accused or reduce the punishment ***."  
People v. Hickey
, No. 87286, slip op. at 36 (September 27, 2001) (Harrison, C.J., dissenting).  The supreme court held that retroactive application of the new rules to cases on collateral review was not required. 

In holding that the new rules are not constitutional as such to implicate a 
Teague
 analysis, the court noted:

"The new rules governing capital cases create rules of procedure.  The safeguards set forth in the new rules are broader than the constitutional rights they protect.  A violation of procedures designed to secure constitutional rights should not be equated with a denial of those constitutional rights. *** The new rules do not set a constitutional standard.  Alleged violations of rules of procedure which do not violate a defendant's constitutional rights do not warrant post-conviction relief."  
People v. Hickey
, slip op. at 32. 

The court reasoned that the rules function as devices to protect those rights given by the federal and state constitutions, "such as, for example, the right to counsel and the right to a fair trial."  
Hickey
, slip op. at 33.  However, the new rules themselves are not of constitutional dimension.

The reasoning and holding set forth in 
Hickey
 are directly applicable to this case.  The new rule set forth in 
Brocksmith
 stating that it is ultimately the defendant's decision whether or not to tender a lesser-included offense instruction to a jury is a procedural rule safeguarding defendant's right to a fair trial.  Indeed, the rule merely provides that a trial-related decision, previously thought to be within the province of counsel, is now a decision over which a defendant ultimately has control.  In addition, the procedural safeguard of the rule itself has limited application.  In a bench trial, a judge determines from the evidence whether the defendant is guilty of murder or of some lesser-included offense.  
People v. Garcia
, 188 Ill. 2d 265, 273 (1999).  The rule does not rise to the level of " 'a watershed rule of criminal procedure'  which 'implicate[s] the fundamental fairness and accuracy of a trial.' "  
Hickey
, slip op. at 32, quoting slip op. at 39-40 (Kilbride, J., dissenting). Additional support for our holding can be found in this court's unwillingness to apply
 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), 
retroactively to cases on collateral review.  
People v. Kizer
, 318 Ill. App. 3d 238, 253 (2000); 
People v. Gholston
, 332 Ill. App. 3d 179.

Even if we were to apply 
Brocksmith
 retroactively, defendant is still unable to establish he was not culpably negligent in regards to the late filing.  In his affidavit attached to his supplemental petition, defendant stated that he filed his 
pro se
 petition "shortly after" he first learned of the decision in 
Brocksmith
.  However
, defendant's 
pro se
 petition did not even allege a 
Brocksmith
 violation.  That allegation was not presented to the trial court until defendant filed his supplemental petition in 2000, five years after 
Brocksmith
 was decided.  This supplemental petition was filed by counsel who had been appointed in 1995.

Consequently, as the trial court found, the petition was not timely filed.  While the court chose to address the substance of the petition's allegations, we may affirm the trial court on any basis supported by the record.  
People v. Reed
, 298 Ill. App. 3d 285, 295 (1998).  Here, the record amply demonstrates that defendant did not file his petition within the limitations period set forth in section 122-1, and he has not shown that the delay was not due to his culpable negligence.  We therefore affirm the dismissal of the petition on this ground.  

B.  Substantial Showing of a Constitutional Violation   

In addition to this procedural bar, a defendant is not entitled to a postconviction petition evidentiary hearing unless the allegations set forth in the petition, as supported by the trial record or accompanying affidavits, make a substantial showing of a constitutional violation.  
People v. Page
, 193 Ill. 2d 120, 131 (2000).  In making that determination, all well-pleaded facts in the petition and affidavits are to be taken as true, but nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act. 
People v. Coleman
, 183 Ill. 2d 366, 381 (1998).  The defendant bears the burden of establishing that a substantial violation of his constitutional rights occurred.  
People v. Frieberg
, 305 Ill. App. 3d 840, 846 (1999).  On appeal, the circuit court's decision to dismiss the petition without an evidentiary hearing is subject to plenary review.  
Coleman
, 183 Ill. 2d at 388.

Defendant's petition was properly dismissed where it failed to make a substantial showing of a constitutional violation.  Defendant's brief intermingles a due process argument, along with an ineffective assistance of counsel argument, with respect to this issue.  Defendant argues "whether the right to make this personal decision is perceived as an aspect of due process, as an aspect of effective representation of counsel, or as a combination of the two, it is clearly a right of constitutional dimension appropriate for postconviction review."  We will address these arguments separately.

Defendant's claim that he was not given the ultimate decision whether to instruct the jury on a lesser-included offense does not implicate due process analysis in this case.  
Brocksmith
 did not classify the new criminal procedural rule as a due process right.  Indeed, defendant has failed to cite, nor can we locate, any case law supporting such a proposition.  The rule announced in 
Brocksmith
 is a procedural rule which safeguards defendant's due process right to a fair trial and does not possess constitutional significance on its own.

Ineffective-assistance-of-trial-counsel claims in postconviction petitions are judged by the standard set forth in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  This is the same standard used to analyze ineffective-assistance-of-counsel claims made on direct review.  To establish ineffective assistance of trial counsel, a defendant must first demonstrate that his defense counsel's performance objectively measured against prevailing professional norms, "was so deficient that [] counsel was not functioning as the 'counsel' guaranteed by the sixth amendment
."  
People v. Easley
, 192 Ill. 2d 307, 317 (2000).  Secondly, defendant must demonstrate that, but for his defense counsel's deficient performance, the result of the proceeding would have been different.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  Both prongs of the 
Strickland
 test must be satisfied before a defendant can prevail on a claim of ineffective assistance of counsel. "Courts, however, may resolve ineffectiveness claims under the two-part 
Strickland
 test by reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of counsel's performance."  
People v. Coleman
, 183 Ill. 2d at 397-98; see 
People v. Erickson
, 161 Ill. 2d 82, 90 (1994); 
People v. Albanese
, 104 Ill. 2d 504, 527 (1984).

In considering whether defendant has proven he was prejudiced by his counsel's failure to ask him whether he wanted the jury instructed on involuntary manslaughter, we note the trial court's findings in this case.  The trial judge who dismissed defendant's postconviction petition at the second stage was also the judge who presided over defendant's original trial.  In dismissing the petition, the judge commented that he had heard all the evidence in this case.  The judge then stated that "under all the attendant circumstances in this case, I would never have given or tendered, even if tendered, a lesser offense of involuntary manslaughter."  An involuntary manslaughter instruction can be given when there is credible evidence that an accused recklessly performed acts likely to cause great bodily harm or death, although that result is not a substantial certainty.  
People v. DiVincenzo
, 183 Ill. 2d 239, 250 (1998).  To warrant an instruction on a lesser-included offense, there must be some "credible" evidence to support it.  
DiVincenzo
, 183 Ill. 2d at 249.  Generally, an involuntary manslaughter instruction is not warranted where the nature of the killing indicates it was not the result of reckless conduct.  
DiVincenzo
, 183 Ill. 2d at 251.  

The facts introduced in defendant's original trial established that the victim's body was found by paramedics on the bathroom floor.  There were extensive burns and bruises on his body and skin remained in the bathtub, consistent with the victim having been forced into scalding water.  The medical examiner testified that the victim had burns over 70% of his body, signs of hemorrhage in the neck muscles, fractures of the ribs, a laceration of the kidney and a subdural hematoma of the brain.  When confronted with the pathology report finding that one of the victim's causes of death was strangulation, defendant admitted to detectives that he put a towel around the victim's neck while he was in the tub and he pulled the towel tight.  The act of wrapping an object tightly around a person's neck cannot be considered reckless conduct.  
People v. Fickett
, 204 Ill. App. 3d 220, 231 (1990).  

Based on these facts, the trial court's finding that it would not have given an involuntary manslaughter instruction even if defendant's trial counsel had requested one, conclusively shows that defendant suffered no prejudice due to his asserted claims under 
Brocksmith
.  Relevant to this issue is the holding in 
People v. Scott
, 194 Ill. 2d 268, 275-76 (2001), where the supreme court affirmed the denial of the defendant's postconviction petition alleging ineffective assistance of counsel based on a failure to present more mitigation evidence.  The trial court, which had imposed a sentence of death after the defendant waived his right to a jury for sentencing, found that presentation of the additional evidence would not have altered his decision to sentence the defendant to death.  "The judge's findings demonstrate that he would not have imposed a different sentence on the defendant even if the evidence of remorse had been fully developed at the sentencing hearing, as the defendant now contends it should have been."  
People v. Scott
, 194 Ill. 2d at 276.    

As we have disposed of this case based on the untimeliness of the petition and the lack of prejudice, we decline to address the State's contention that defendant has also failed to show that his trial counsel's performance fell below an objective standard of reasonableness and that defendant's petition was properly dismissed because it did not have necessary affidavits attached.  See 
People v. Collins
, 202 Ill. 2d 59 (2002); 725 ILCS 5/122-2 (West 1994). 

For the foregoing reasons, we affirm the decision of the trial court
 dismissing defendant's postconviction petition.

Affirmed.

CAMPBELL, P.J., and REID, J., concur.