2022 IL App (1st) 191367-U

No. 1-19-1367

Order filed May 10, 2022.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 12223 |
| | ) | |
| MARC LEON, | ) | The Honorable |
| | ) | Domenica Stephenson, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's dismissal, on the State's motion, of defendant's postconviction petition is affirmed where he failed to (1) show that he was not culpably negligent for its untimely filing, and (2) establish he was denied reasonable assistance of postconviction counsel.

¶ 2    Defendant Marc Leon appeals from the circuit court's dismissal, upon the State's motion, of his petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). On appeal, defendant contends that the circuit court erred in dismissing the

petition when it made a substantial showing that he was not culpably negligent for its untimely filing and that he was denied the benefit of his plea bargain with the State. Defendant further alleges that he was denied reasonable assistance when postconviction counsel failed to file a response or argue against the State's motion to dismiss. We affirm.

¶ 3 On September 16, 2009, defendant entered a negotiated plea of guilty to unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2008)) in exchange for a seven-year prison sentence. On that date, defendant was already serving a 20-year prison sentence for attempted first degree murder in case number 05 CR 2498.

¶ 4 At the plea hearing, the trial court stated, relevant here, that the term imposed in the instant case would be consecutive to defendant's sentence in case number 05 CR 2498, and that defendant would receive 841 days of presentence custody credit.[1] Defendant would serve two years of mandatory supervised release (MSR) following his sentence. The court further admonished defendant that if he wished to appeal, he must file within 30 days a motion to withdraw the plea stating his reasons for withdrawal. If the motion were granted, the guilty plea would be set aside and the case would be set for trial. However, if the motion were denied, defendant would have 30 days to file an appeal. Defendant indicated that he understood.

¶ 5 Defendant's order of commitment and sentence reflects a seven-year sentence, to be served consecutive to the sentence in case number 05 CR 2498, and 841 days of credit for time served. He did not file a motion to withdraw his guilty plea or a direct appeal.

¶ 6 In March 2013, defendant filed a *pro se* "petition for relief from void judgment" alleging, relevant here, that he was denied effective assistance by plea counsel's failure to adequately advise

___

[1] Defendant received 91 days of presentence custody credit in case number 05 CR 2498.

him that he would receive credit against only one sentence. The petition further alleged that the trial court "breached" its agreement with defendant when it failed to admonish him that he would receive credit for time served on only one case rather than "on both as discussed," resulting in defendant being "forced to serve more time." The petition finally alleged that defendant was not admonished that he must serve a term of MSR when released from prison.

¶ 7 The State filed a motion and amended motion to dismiss. On November 25, 2013, defendant told the court he wished to file a written response and asked for an attorney. The circuit court appointed counsel.

¶ 8 On April 8, 2014, counsel sought leave to file "Defendant-Petitioner's Recharacterized Petition From Relief From Void Judgment to a Supplemental *Pro-Se* Postconviction Petition." After the circuit court expressed confusion regarding the document's title, counsel explained defendant wished the *pro se* "void from judgment" petition be recharacterized as a postconviction petition, and asked leave to "supplement" the *pro se* filing with what defendant "really" intended to request. Ultimately, the circuit court recharacterized the new filing as a postconviction petition, struck the word "supplemental" from its title, stated that the first "90 days" began on that date, and continued the cause.

¶ 9 "Defendant-Petitioner's Recharacterized Petition From Relief From Void Judgment to a *Pro-Se* Postconviction Petition" alleged that his fully negotiated plea included, as a "term of the *** agreement," that he would receive 841 days of presentence custody credit. However, a calculation worksheet that defendant received in prison did not reflect this credit, and he was informed that he would only receive the credit against the sentence imposed in case number 05 CR 2498. The petition further alleged that defendant should be afforded the benefit of his bargain with

the State, that is, 841 days of credit against his 7-year sentence in the instant case, number 07 CR 12223.

¶ 10   Counsel attached the plea hearing transcript and a Department of Corrections (DOC) sentence calculation worksheet listing defendant's "projected out date" as November 7, 2027. This document stated that defendant's "1st Sentence" in case number 05 CR 2498 was 20 years to be served at 85%, and his "Consecutive Sentence" in case number 07 CR 12223 was 7 years to be served at 50%, and the "Total Aggregate Sentence" was 27 years. The handwritten date on the document appears to be "9/19/09."

¶ 11   On June 19, 2014, the circuit court summarily dismissed the petition as frivolous and patently without merit in a written order. The court noted, in pertinent part, that because defendant was required to serve consecutive sentences, he was not entitled to apply the presentence custody credit in this case against both sentences; rather, the 841 days applied to the sentence he was serving while awaiting a disposition in the instant case, *i.e.*, to the sentence he was serving in case number 05 CR 2498.

¶ 12   On appeal, this court reversed the circuit court's judgment and remanded for further proceedings when the "inconclusive" record did not rebut defendant's assertion that the 841 days' credit was part of the plea agreement. See *People v. Leon*, 2016 IL App (1st) 142131-U, ¶ 18.

¶ 13   On January 11, 2017, postconviction counsel filed a certificate pursuant to Supreme Court Rule 651(c) (eff. Feb. 6, 2013), stating that she consulted with defendant by phone and in person to ascertain his claims, examined the relevant portions of the common law record, report of proceedings, and the *pro se* postconviction petition, and had supplemented the petition for a "necessary and adequate presentation" of defendant's claims.

¶ 14     On March 14, 2017, the State filed a motion to dismiss alleging, relevant here, that the petition was untimely as defendant, who was sentenced on September 16, 2009, should have commenced a postconviction proceeding by September 2012, and offered no explanation for filing six months late.[2]

¶ 15     On August 17, 2017, postconviction counsel asked the circuit court for a continuance because she had not received necessary documents from defendant. On September 21, 2017, counsel requested another continuance because she was "trying to acquire some documents from [defendant] pertaining to culpable negligence." On October 31, 2017, counsel informed the court that she had received documents from defendant and would file a response on December 14, 2017. On May 10, 2018, postconviction counsel asked the circuit court for a continuance as she was "still *** trying to get the documentation" for a "culpable negligence argument." On October 11, 2018, counsel informed the court she had been unable to obtain an affidavit from defendant and asked that he be brought to court.

¶ 16     On February 7, 2019, postconviction counsel filed defendant's supplemental affidavit averring that he entered a negotiated plea whereby he "would receive 841 days credit" and that the "court found [he was] entitled to receive credit for time actually served for a total of 841 days," but he subsequently learned he "was not receiving credit." Defendant also averred that he was "subject to numerous and prolonged lockdowns," which prevented access to the law library and delayed the filing of the petition for relief from judgment until March 2013. He finally averred that he was not culpably negligent for not seeking relief before then, as he relied on the transcript of

---

[2] The supplemental record on appeal contains a purported response to the State's motion to dismiss, but this document is not signed by postconviction counsel or file-stamped. Although the State references this document in its brief, we will not consider it, as there is no indication that it was filed in the circuit court. On appeal, defendant contends postconviction counsel did not file a response.

the plea hearing and the order of commitment and sentence which stated he would receive 841 days of credit.

¶ 17    On April 18, 2019, the court heard argument on the State's motion to dismiss. The State argued that defendant's petition was untimely filed in March 2013, six months late, and he offered no explanation for the delay. Additionally, defendant failed to make a substantial showing of a constitutional violation when his claims were based on the record, could have been raised on direct appeal, and lacked documentary support.

¶ 18    Postconviction counsel argued that defendant was entitled to the benefit of his bargain with the State for 841 days of credit. Moreover, defendant did not learn he would not receive the credit until he was at the penitentiary and was thereafter subject to "numerous and prolonged" lockdowns which prevented him from filing anything until March 2013.

¶ 19    On June 12, 2019, the circuit court granted the State's motion to dismiss in a written order noting, relevant here, that defendant had three years from his conviction on September 16, 2009, to seek postconviction relief. However, defendant did not file anything until March 2013, six months after the deadline. To the extent that defendant argued he was not culpably negligent due to prison lockdowns, the court noted that defendant failed to provide any details regarding the lockdowns, other than that they were numerous, and that he was "on notice" of this issue when he received the sentence calculation worksheet in September 2009.

¶ 20    On appeal, defendant first contends that the circuit court erred in dismissing the petition when he was not culpably negligent for its untimely filing, and the petition made a substantial showing that he was denied the benefit of his bargain with the State.

¶ 21    The Act provides a three-step mechanism by which individuals under criminal sentence can assert that their convictions resulted from a substantial denial of their constitutional rights. *People v. Dupree*, 2018 IL 122307, ¶ 28. Here, defendant's petition was dismissed at the second stage.

¶ 22    At that stage, the defendant has the burden to make a substantial showing of a constitutional violation, that is, that the allegations, if proven at an evidentiary hearing, would entitle him to relief. *People v. Domagala*, 2013 IL 113688, ¶ 35. The State, in turn, may file an answer or motion to dismiss the petition. 725 ILCS 5/122-5 (West 2012). The circuit court does not resolve evidentiary questions or engage in fact-finding or credibility determinations. *Domagala*, 2013 IL 113688, ¶ 35. Instead, all well-pled factual allegations are taken as true unless positively rebutted by the record. *Id.* A petition is advanced to a third-stage evidentiary hearing only when the allegations, supported by " 'affidavits, records, or other evidence,' " make a substantial showing of a constitutional deprivation. *Dupree*, 2018 IL 122307, ¶ 28 (quoting 725 ILCS 5/122-2 (West 2014)). We review the dismissal of a postconviction petition upon the State's motion *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 23    Before reaching the merits of defendant's arguments, we first address the timeliness of his petition.

¶ 24    Pursuant to section 122-1(c) of the Act, if a defendant does not file a direct appeal, his or her postconviction petition "shall be filed no later than 3 years from the date of conviction, unless [the defendant] alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2012).

¶ 25    In the case at bar, defendant did not file a postconviction petition within the statutory limitation period. Defendant entered a guilty plea and was sentenced on September 16, 2009. Because he did not file a motion to withdraw the guilty plea or a direct appeal, he was required to file his postconviction proceeding by Monday, September 17, 2012.[3] However, defendant's *pro se* filing was not received by the circuit court until March 5, 2013. Accordingly, we must determine whether the delay was not due to his culpable negligence.

¶ 26    "It is well settled that all citizens are charged with knowledge of the law" and that "[i]gnorance *** will not excuse a delay in filing a lawsuit." *People v. Lander*, 215 Ill. 2d 577, 588 (2005); see also *People v. Johnson*, 2017 IL 120310, ¶ 27 (finding that the defendant's "lack of legal knowledge as to postconviction matters" was insufficient to establish lack of culpable negligence because "ignorance of the law or of one's legal rights does not provide an excuse for his late filing"). However, the Act permits the filing of an untimely petition when a defendant "alleges facts showing that the delay in filing the petition was not due to his or her culpable negligence." *Id*. ¶ 26; see also 725 ILCS 5/122-1(c) (West 2012).

¶ 27    "Culpable negligence has been defined as '[n]egligent conduct that, while not intentional, involves a disregard of the consequences likely to result from one's actions.' " *People v. Boclair*, 202 Ill. 2d 89, 106 (2002) (quoting Black's Law Dictionary 1056 (7th ed. 1999)). In other words, it is "greater than ordinary negligence and is akin to recklessness." *Id*. at 108. A defendant alleging a lack of culpable negligence "must support his assertion with allegations of specific fact showing why his tardiness should be excused." *People v. Hobson*, 386 Ill. App. 3d 221, 233 (2008). It is "very difficult" to show a lack of culpable negligence (*People v. Turner*, 337 Ill. App. 3d 80, 86

---

[3] September 16, 2012, was a Sunday.

(2003)), and "[a] defendant bears a heavy burden to affirmatively show why the exception to the statute of limitations applies to his case" (*People v. Gunartt*, 327 Ill. App. 3d 550, 552 (2002)). In other words, vague or conclusory allegations are insufficient. *People v. Walker*, 331 Ill. App 3d 335, 340 (2002).

¶ 28    Initially, defendant contends that the circuit court improperly engaged in a credibility determination at the second stage of proceedings by finding that he was culpably negligent. Defendant relies on *People v. Wheeler*, 392 Ill. App. 3d 303 (2009), for the proposition that a culpable negligence claim must be addressed at a third stage evidentiary hearing because it rests on an assessment of a defendant's credibility.

¶ 29    In *Wheeler*, the defendant pled guilty to multiple counts and was sentenced to multiple concurrent prison terms. *Id.* at 304. The trial court did not admonish the defendant that he must serve a three-year term of MSR upon completion of his prison term. *Id.* The defendant did not file a direct appeal. *Id.*

¶ 30    The defendant then filed a *pro se* petition for relief from judgment, requesting that his sentence be modified because the trial court failed to admonish him, prior to the entry of his guilty pleas, that he must serve a three-year MSR term. *Id.* He also filed a *pro se* petition for leave to file a late petition for postconviction relief. In support, he attached an affidavit explaining that the four-month delay was caused by (1) five prison transfers during the relevant three-year period which limited his access to his trial materials and the prison law library, and (2) an eight-month confinement in isolation for prison rule violations. *Id.* at 304-05.

¶ 31    The circuit court appointed postconviction counsel, who filed a supplemental petition asking that the defendant's term of imprisonment be reduced to 27 years followed by a 3-year MSR term in order to enforce the benefit of the defendant's bargain with the State. *Id.* at 305.

¶ 32    The State filed a motion to dismiss, which conceded the MSR issue, but alleged the petition was untimely because the defendant failed to file within three years of his conviction and the delay was not excusable under the Act. *Id.* The defendant filed a response, including a second affidavit detailing the causes for the delay, namely, that the prison was on general lockdown for significant periods which precluded access to the law library and notaries, and that the circuit court clerk failed to respond to a request for the transcripts from the defendant's guilty plea hearing. *Id.* Following arguments on the motion to dismiss, the circuit court denied the State's motion, found the defendant not culpably negligent, and reduced his sentence based upon the fact that he was not admonished regarding MSR. *Id.* at 306. In other words, the court granted the defendant relief under the Act without holding an evidentiary hearing.

¶ 33    On appeal, the State argued that the defendant was culpably negligent in filing his petition four months late and that the circuit court erred by granting the defendant "postconviction relief" without holding an evidentiary hearing. *Id*.

¶ 34    This court vacated the circuit court's order granting the defendant relief on his petition at the second stage, as it "prevented the State from fulfilling its statutory obligation of filing an answer, with a premature grant of relief," and remanded with instructions to hold an evidentiary hearing. *Id.* at 310-11. Had the Act contemplated relief at the second stage of proceedings, there would not be a requirement that the State file an answer following the denial of a motion to dismiss. *Id.* at 309-10 (citing 725 ILCS 5/122-5 (West 2006). We further found that:

"when a *** court determines whether or not a defendant was culpably negligent, [it] must assess the defendant's credibility. [Citation.] Such an assessment is not intended for a second-stage dismissal hearing, where [the] court is foreclosed from fact-finding and all well-pleaded facts are taken as true. [Citation.] Assessments of credibility are better suited to a third-stage evidentiary hearing, which does not occur until after the State's answer, which never occurred in this case." *Id.* at 310.

¶ 35 We therefore remanded for further proceedings under the Act without addressing the merits of the State's untimeliness argument.

¶ 36 Defendant relies on *Wheeler* to conclude that he is entitled to a third stage evidentiary hearing based solely on the fact that he asserted a lack of culpable negligence. In other words, according to defendant, at the second stage of proceedings under the Act, the circuit court was bound to accept his claim as true and only determine its credibility at an evidentiary hearing. However, our decision in *Wheeler* was not based upon the substance of the circuit court's dismissal order, but whether the order granting the defendant relief at the second stage was procedurally proper under the Act. Our analysis focused on whether, before granting postconviction relief, the circuit court was statutorily required to hold an evidentiary hearing during which the State could challenge the defendant's claims regarding a lack of culpable negligence. See *Id.* (rejecting the defendant's claim that the evidence presented at a third-stage evidentiary hearing was limited to the underlying constitutional claim).

¶ 37 In the case at bar, however, the dispositive question is whether the circuit court properly granted the State's motion to dismiss defendant's postconviction petition as untimely at the second stage of proceedings. In other words, we must consider whether defendant's postconviction

petition sufficiently alleged—based solely on the record, the petition, and supporting affidavits—that the six-month delay in filing the initial *pro se* petition was not due to his culpable negligence. *Wheeler* did not hold that a defendant has the right to advance to third stage proceedings merely because he submits an affidavit averring an excuse for the untimely filing. In fact, *Wheeler* recognized that: "[a]t the second stage, the trial court may dismiss a petition as untimely: (1) if the petition fails to contains 'allegations of lack of culpable negligence'; and (2) if the State moves to dismiss on this round." *Wheeler*, 392 Ill. App. 3d at 308 (quoting *People v. Perkins*, 229 Ill. 2d 34, 43 (2007)). For the following reasons, we conclude that defendant's conclusory allegations are not sufficient.

¶ 38 In his supplement affidavit, defendant averred that his delay in filing was not due to his culpable negligence because he relied on the transcript of the plea hearing and order of commitment and sentence. Once defendant realized that DOC would not award the credit he expected, his filing was delayed due to "numerous and prolonged lockdowns" during which he could not access the prison law library.

¶ 39 Even accepting defendant's averments as true, as we must at this second stage of proceedings (*Domagala*, 2013 IL 113688, ¶ 35), we cannot agree that he made the requisite showing of sufficient factual allegations demonstrating he was not culpably negligent for filing beyond the limitations period detailed in the Act. See 725 ILCS 5/122-1(c) (West 2012). The record reveals, and defendant concedes, that the sentence calculation worksheet, which defendant received in September 2009, illustrated the discrepancy between his understanding of his presentence custody credit and the DOC calculation. Thus, defendant knew of the discrepancy in 2009. However, defendant did not file the *pro se* petition until March 2013.

¶ 40   " '[W]hether delay is due to culpable negligence depends not only on when the claim is discovered [by the defendant] but [also] on how promptly the defendant takes action after the discovery.' " *People v. Ramirez*, 361 Ill. App. 3d 450, 453-54 (2005) (quoting *People v. Davis*, 351 Ill. App. 3d 215, 218 (2004)). In his reply brief, defendant argues that he cannot be deemed culpably negligent when he "reasonably relied" on the trial court's statements at the hearing and on the mittimus and "mistakenly assumed" that the DOC's "mistake" would be remedied, and acted when it "became clear" that the DOC did not intend to award him the contested credit.

¶ 41   However, defendant pled no facts explaining why he assumed that any alleged error would be corrected or what steps he took to address the issue with the DOC between 2009 and when he filed the *pro se* petition in March 2013. Moreover, his explanation for the filing, *i.e.*, that he acted when it became clear that DOC would not honor his understanding of the plea agreement, does not include the date on which he decided to file the *pro se* petition. Although defendant averred that once he decided to file, numerous lockdowns prevented access to the prison law library and a timely filing, he provided no details as to the timing and duration of those lockdowns, or the date when he began trying to access the law library. This lack of detail is fatal to his claim. See *Walker*, 331 Ill. App. 3d at 341-42 (the defendant's "bald assertion" that a lockdown prevented him from timely filing, without detailing when the lockdown occurred and whether it was during the applicable filing period, left the court "to speculate" whether the delay was "attributable solely or substantially" to the lockdown).

¶ 42   An example of the specificity required to demonstrate lack of culpable negligence in filing an untimely postconviction petition is set forth by the facts pled by the defendant in *People v. Upshaw*, 2017 IL App (1st) 151405.

¶ 43    In that case, the defendant argued that he was not culpably negligent for untimely filing his postconviction petition, and supported that claim with documents demonstrating that his correctional facility was under "general lockdown" for 179 days between the date that his petition for leave to appeal (PLA) to our supreme court was denied and when he filed the postconviction petition, and that facility staff lost his trial transcripts and legal materials. *Id.* ¶ 13. Additionally, the defendant averred that during lockdowns, he was barred access to the prison law library and that it took two weeks after the end of a lockdown to regain access, and provided affidavits from prison law library staff detailing the date that his papers were lost and his attempts to retrieve them. *Id.* On appeal from the grant of the State's motion to dismiss, the defendant contended that he made a substantial showing that he was not culpably negligent in the untimely filing of his petition.

¶ 44    This court agreed, as the documents supporting the defendant's postconviction petition, and those filed in response to the motion to dismiss, detailed the lockdowns which the defendant averred were due to no fault of his own, and how prison staff lost the defendant's trial transcripts and legal materials. *Id.* ¶¶ 25-26. We noted that letters attached to the initial petition demonstrated that the defendant "spent a great deal of time and effort" attempting to retrieve his papers and began immediately after his PLA was denied. *Id.* ¶ 26. Considering the circumstances alleged by the defendant—that his access to the law library was limited, he began working on his petition within days of the denial of his PLA, and he was unable to retrieve his legal papers—we concluded that the defendant carried his burden to provide sufficient and specific facts to make a substantial showing that he was not culpably negligent in filing his postconviction petition eight months late. *Id.* ¶¶ 27, 31.

¶ 45    In the instant case, however, defendant alleged no facts detailing the steps he took to resolve the discrepancy in presentence custody credit with the DOC, on what date he realized the mistake would not be corrected, and when he began the preparation of the *pro se* petition. In fact, defendant's position appears to be that he assumed the DOC would correct the alleged error and that he acted when it was "clear" that the error would not be corrected. Unlike *Upshaw*, where the defendant outlined his actions to explain his delay in filing, here, defendant provides no facts to explain his inaction between September 2009 and March 2013. See also *People v. Rissley*, 206 Ill. 2d 403, 421-22 (2003) (finding that the defendant was not culpably negligent when, among other reasons, he "remained in constant contact with his direct appeal counsel" on whose advice he relied regarding the postconviction process).

¶ 46    Defendant's failure to support his claim with specific facts explaining why his untimeliness should be excused is fatal to his claim. See *Hobson*, 386 Ill. App. 3d at 233. Accordingly, because defendant failed to allege specific facts demonstrating he was not culpably negligent for his untimely filing, the circuit court properly dismissed his untimely postconviction petition.

¶ 47    Defendant next contends that he was denied reasonable assistance when postconviction counsel "left unrebutted" the arguments in the State's motion to dismiss. He argues that postconviction counsel's "failure" to fulfill the requirements of Rule 651(c) warrants remand for the appointment of new counsel and further proceedings under the Act.

¶ 48    Pursuant to the Act, if a petition advances to the second stage, an indigent defendant is appointed counsel, who must ascertain the basis of the defendant's claims, shape them into an appropriate legal form, and present them to the court. *People v. Lesley*, 2018 IL 122100, ¶¶ 31, 33. There is no constitutional right to postconviction counsel; rather, the right to postconviction

counsel arises from the Act itself and a defendant is only entitled to "reasonable assistance." *Perkins*, 229 Ill. 2d at 42.

¶ 49    "To assure the reasonable assistance required by the Act, Supreme Court Rule 651(c) imposes specific duties on postconviction counsel." *Id.* Pursuant to the rule, postconviction counsel must filed a certificate attesting that counsel (1) consulted with the defendant to ascertain his contentions of constitutional deprivations, (2) examined the record of the trial proceedings, and (3) made any amendments to the filed *pro se* petition necessary to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013).

¶ 50    Pursuant to the rule, "necessary" amendments include "routine" amendments that avoid specific bases for dismissal such as ineffective assistance of appellate counsel for failure to raise a claim on direct appeal. See *People v. Turner*, 187 Ill. 2d 406, 412-14 (1999) ("[c]ounsel's failure to amend the post-conviction petition to allege ineffective assistance of appellate counsel prevented the circuit court from considering the merits" of the petition). However, there is no requirement that postconviction counsel "advance frivolous or spurious claims." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). "If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Id.*

¶ 51    Substantial compliance with Rule 651(c) is sufficient. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. Postconviction counsel's filing of a Rule 651(c) certificate attesting that counsel has complied with the rule creates a rebuttable presumption that counsel has done so. *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 26. "Where postconviction counsel files a Rule 651(c) certificate creating a presumption of compliance, it is the defendant's burden to overcome the

presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by the rule." *Id.* ¶ 26; see also *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 28 (when faced with a facially valid 651(c) certificate, the question is "whether the record positively rebuts the presumption of reasonableness"). We review compliance with a supreme court rule *de novo*. *Gallano*, 2019 IL App (1st) 160570, ¶ 26.

¶ 52    Before addressing the substance of defendant's arguments on appeal, we note that in *People v. Cotto*, 2016 IL 119006, ¶ 41, our supreme court observed that Rule 651(c) "applies only to a postconviction petition initially filed by a *pro se* defendant." See also *People v. Mitchell*, 189 Ill. 2d 312, 357-58 (2000) (counsel filed the initial postconviction petition and an amended petition; the court addressed the applicability of Rule 651(c) and noted that because the defendant "did not file a *pro se* petition, his attorney could not have violated that provision").

¶ 53    Here, although defendant initially filed a *pro se* petition for relief from judgment, the circuit court granted counsel's motion to characterize the *pro se* filing as a postconviction petition and defendant filed, through counsel, "Defendant-Petitioner's Recharacterized Petition From Relief From Void Judgment to a *Pro-Se* Postconviction Petition." Accordingly, as defendant had the assistance of counsel at the first stage of proceedings under the Act, and the circuit court considered the petition counsel drafted for defendant, Rule 651(c) is inapplicable. See *Cotto*, 2016 IL 119006, ¶ 41; see also *People v. Richmond*, 188 Ill. 2d 376, 380-83 (1999) (where a *pro se* postconviction petition was filed, Rule 651(c) applies to *subsequent* representation at the second stage, whether by retained or appointed counsel). Because appointed counsel drafted and filed the postconviction petition at the first stage of proceedings under the Act, she did not need to shape defendant's *pro se* petition into proper legal form at the second stage, and accordingly, the principles of Rule 651(c)

do not apply to the case at bar. See *People v. Anguiano*, 2013 IL App (1st) 113458, ¶¶ 11, 24 ("Rule 651(c) applies when a defendant proceeds *pro se* at the first stage and is represented by counsel at the second stage"); *People v. Bennett*, 394 Ill. App. 3d 350, 353 (2009) ("Rule 651(c) is inapplicable when the original petition was not filed *pro se*").

¶ 54    Although Rule 651(c) does not apply to this case, defendant is, nevertheless, entitled to a reasonable level of assistance of counsel at the second stage. *Cotto*, 2016 IL 119006, ¶¶ 41-42. Rule 651(c) is merely a vehicle for ensuring this level of assistance at the second stage. *Anguiano*, 2013 IL App (1st) 113458, ¶ 37. Accordingly, the question in this case is whether postconviction counsel provided a reasonable level of assistance. See *Cotto*, 2016 IL 119006, ¶ 43. Our supreme court has explained that this level of assistance is " 'less than that afforded by the federal or state constitutions.' " *Id.* ¶ 45 (quoting *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)).

¶ 55    In *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 58, we noted that our supreme court had not explicitly stated a standard on which to evaluate unreasonable assistance claims. We therefore concluded that "a *Strickland*-like analysis" was the appropriate standard. *Id.* ¶ 59; see also *Strickland v. Washington*, 466 U.S. 668 (1984). We observed that such a standard "requires an evaluation of prejudice" which would "prevent pointless remands to trial courts for repeated evaluations of claims that have no chance of success." *Zareski*, 2017 IL App (1st) 150836, ¶ 59. When a defendant alleges unreasonable assistance for failure to present a claim, this court examines not just whether postconviction counsel should have presented or amended the claim, but also whether the failure to do so prejudiced the defendant. *Id.* ¶ 61; see also *People v. Jackson*, 205 Ill. 2d 247, 259 (2001) ("To establish the prejudice prong [under *Strickland*], defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."). If we determine that the potential claim had no merit, then the defendant "cannot receive postconviction relief on that claim, regardless of whether [postconviction counsel] should have presented it earlier, better, or at all." *Zareski*, 2017 IL App (1st) 150836, ¶ 61.

¶ 56 Here, defendant contends that postconviction counsel's failure to respond to the State's motion to dismiss, with legal and factual arguments "rebutting" the State's arguments that he was culpably negligent, and had forfeited several of his claims, was unreasonable. He argues that counsel's actions "suggested" that she intended to file a response to the motion to dismiss, yet she "did nothing."

¶ 57 Having reviewed the record before us, we cannot say postconviction counsel failed to provide reasonable assistance where she informed the court she consulted with defendant multiple times. Moreover, the record demonstrates that postconviction counsel requested continuances in order to obtain documentation from defendant "pertaining to culpable negligence," and when she was unable to obtain defendant's affidavit, asked the circuit court to writ him to court. She thereafter filed defendant's supplemental affidavit averring that he was not culpably negligent because he relied on court documents and was "subject to numerous and prolonged lockdowns," which prevented him from accessing the law library and from filing the *pro se* petition until March 2013. At the hearing on the motion to dismiss, counsel argued that defendant did not learn he would not receive credit until he was in prison and was then prevented from accessing the law library due to "numerous and prolonged" lockdowns.

¶ 58 Defendant points to nothing in the record which shows that postconviction counsel was unfamiliar with the need to demonstrate that an untimely petition was not the result of culpable

negligence, or that postconviction counsel failed to muster all available evidence relevant to his claim. Rather, he appears to conclude that counsel's failure to provide additional evidence, in and of itself, supports his claim that he was denied reasonable assistance of postconviction counsel. However, defendant's argument that his postconviction counsel should have alleged additional facts and provided additional evidentiary support assumes that those facts existed and that counsel could have obtained the required evidentiary support. In other words, he asks this court to speculate that postconviction counsel could have successfully alleged a lack of culpable negligence. We cannot engage in such speculation when it is defendant's burden to establish prejudice. *Zareski*, 2017 IL App (1st) 150836, ¶¶ 59, 61.

¶ 59 Moreover, the record reveals that defendant's postconviction counsel filed a certificate pursuant to Rule 651(c). Although Rule 651(c) does not apply here as the postconviction petition was prepared and filed by counsel (*Cotto*, 2016 IL 119006, ¶ 41), postconviction counsel's Rule 651(c) certificate provides additional support for our conclusion that defendant was not denied reasonable assistance of postconviction counsel. Defendant does not argue that postconviction counsel did not communicate with him as required by Rule 651(c) or that the portions of the record presumably reviewed by postconviction counsel contained facts which would clarify whether the delay in filing was not due to his culpable negligence. Rather, defendant contends that counsel should have acquired unspecified documents to support his assertion that he was subject to numerous prison lockdowns.

¶ 60 However, to accept that proposition would require this court to ignore the presumption, created by the filing of a Rule 651(c) certificate, that postconviction counsel "made a concerted effort to obtain" evidence in support of defendant's postconviction claims, but was unable to do

so, unless that presumption is "flatly contradicted by the record." *People v. Johnson*, 154 Ill. 2d 227, 241 (1993); see also *Wallace*, 2016 IL App (1st) 142758, ¶ 27 (a reviewing court may "reasonably presume postconviction counsel made a concerted effort to obtain evidence in support of [the defendant's] postconviction claims, but was unsuccessful"). Here, the record does not contradict the presumption. Based upon counsel's filings and statements before the circuit court regarding her communication with defendant, we presume she asked him whether there were additional specific facts to explain why the delay in filing was not due to his culpable negligence. Based upon counsel's filing of a Rule 651(c) certificate and defendant's supplemental affidavit, and her arguments before the circuit court, we presume that the answers counsel received from defendant were not helpful to defendant's claim or else they would have been incorporated into a supplemental petition.

¶ 61 Ultimately, defendant's claim of prejudice is speculative, which is not sufficient to establish the prejudice prong of the *Strickland*-like analysis. *Zareski*, 2017 IL App (1st) 150836, ¶¶ 59, 61; see also *People v. Bew*, 228 Ill. 2d 122, 135 (2008) (proof of prejudice cannot rest on mere conjecture or speculation). Because defendant was not prejudiced, he cannot establish unreasonable assistance of postconviction counsel and his claim must fail.

¶ 62 Accordingly, the judgment of the circuit court of Cook County is affirmed.

¶ 63 Affirmed.