2024 IL App (1st) 230381-U

No. 1-23-0381

Order filed August 6, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 11 CR 21217 |
| | ) | 11 CR 21218 |
| | ) | |
| JOHN LANDEM, | ) | Honorable |
| | ) | Paul Pavlus, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's second-stage dismissal of defendant's postconviction petition is affirmed where defendant failed to show that he was not culpably negligent for the petition's untimely filing and failed to establish that he was denied reasonable assistance of postconviction counsel.

¶ 2    Defendant John Landem, who pled guilty to three counts of aggravated vehicular hijacking

and two counts of vehicular hijacking, appeals from the second-stage dismissal of his petition and

supplemental petition for postconviction relief filed pursuant to the Post-Conviction Hearing Act

(Act). 725 ILCS 5/122-1 *et seq.* (West 2018). On appeal, defendant contends that the circuit court erred in granting the State's motion to dismiss his petition because he made a substantial showing of a violation of his right to the effective assistance of trial counsel where his attorney ignored his request to take the steps necessary to appeal his convictions. For the reasons that follow, we affirm.

¶ 3    Defendant's convictions arose from the events of November 19, 2011. Following his arrest, defendant was charged by indictment in case number 11 CR 21217 with three counts of aggravated vehicular hijacking based on an allegation that he took a motor vehicle from Joanne Walgreen-Petrillo by the use or threat of imminent use of force while a person under 16 years of age was a passenger in the vehicle. Each count named a different passenger. Defendant was also charged with one count of robbery based on an allegation that he took money from Walgreen-Petrillo. In case number 11 CR 21218, defendant was charged by indictment with two counts of vehicular hijacking based on allegations that he knowingly took a motor vehicle from Gloria Luna and Amanda Bach by the use or threat of imminent use of force. Each count named a different victim.

¶ 4    On March 7, 2013, defendant entered into a negotiated plea wherein he pled guilty to the three counts of aggravated vehicular hijacking in case number 11 CR 21217 and the two counts of vehicular hijacking in case number 11 CR 21218. In exchange, the trial court imposed five concurrent sentences: 25 years for each count of aggravated vehicular hijacking and 15 years for each count of vehicular hijacking.

¶ 5    According to the factual basis presented by the State, on the afternoon of November 19, 2011, defendant approached Walgreen-Petrillo as she was taking her three young children out of her minivan in front of a baby store in Northbrook. He demanded her keys; his hands were in his jacket pockets and Walgreen-Petrillo believed he was carrying a weapon. Defendant allowed her

to take the children out of the minivan, and she gave him her keys and $45. Defendant then drove the minivan onto the Edens expressway, traveling southbound on the shoulder at speeds estimated by witnesses to be between 100 and 120 miles per hour, while being pursued by police. He struck a vehicle that was merging onto the expressway, causing the minivan to spin and crash into three other vehicles. Defendant then exited the minivan and crossed the expressway on foot to the northbound lanes, where traffic was slowed or stopped. He approached a car being driven by Luna, opened her door, grabbed her coat collar, and pulled her out. Luna's passenger, Bach, exited the car. Defendant attempted to flee in Luna's car but was apprehended by police.

¶ 6     The trial court admonished defendant regarding the rights he was giving up, found that a factual basis existed for the plea, and entered guilty findings as to the three charges of aggravated vehicular hijacking and the two charges of vehicular hijacking. The State nol-prossed the robbery charge. The court imposed the five agreed-upon concurrent sentences of 25, 25, 25, 15, and 15 years in prison. Finally, the court admonished defendant of his appellate rights, explaining, among other things, that, prior to taking an appeal, he would have to file a motion to withdraw his plea within 30 days.

¶ 7     Defendant did not file a postplea motion or a notice of appeal.

¶ 8     Over four years later, on July 28, 2017, defendant filed a *pro se* postconviction petition, raising numerous claims. Relevant here, he claimed that his trial counsel was ineffective because, although he instructed counsel "to file an immediate appeal *** on the day of sentencing," he at some point concluded that counsel had failed to file an appeal. Defendant further claimed that, prior to the plea hearing, when counsel announced that "he did a 402 for me and that he got me a plea deal of 25 years at 50%," he told counsel that he "did not want him to ever do a 402 for me."

Defendant told counsel that a different public defender had told him "she could get me a deal of no more than 15 years at 50%." Counsel responded that there was "no way" the other public defender had said that, became hostile, and stated that "the best thing I could do for myself is to take this offer from the State and go and then I could come back on appeal. He said then I could get a different attorney who has time to deal with a case like mine."

¶ 9    Defendant asserted in his petition that, "to date," he had not received any replies to letters he sent to counsel, leading him to assume that counsel had not filed an appeal on his behalf. He attached affidavits executed by two family members, Roy H. Landem and Rita M. Landem, attesting to, among other things, defendant's interest in appealing and each stating, "[Defendant] told me many times over the past many years that he thought [trial counsel] did not file his appeal as instructed because he had not heard anything from the court and [trial counsel] does not reply."

¶ 10    As to the tardiness of his postconviction petition, defendant argued that he was not to blame for the delay in filing for two reasons. First, he claimed that "until now," it had been impossible for him to access law libraries and conduct the necessary legal research to prepare a petition, as he had been moved eleven times among six county, state, and federal correctional centers. Defendant included in his petition a list of "moves," identifying the names of the institutions where he had been incarcerated "since this matter began" and "before and after sentencing." He listed the approximate number of weeks or months he "stayed" at each facility before being relocated but provided no dates. He also asserted that, "In the correctional system it is not uncommon for an inmate to lose everything, including legal documents, while being transferred between institutions and jurisdictions."

¶ 11 Defendant noted that, at one Illinois prison where he "stayed about 7-9 months," the law library was rarely open; that at another State prison where he was housed "both before and after sentencing," the law library was rarely accessible; and that, at the federal facility where he was "presently housed 30 months," the law library provided "only federal case law." In support, he attached a June 15, 2017, email from the legal department of the federal facility, responding to an email request for State law materials that he sent on June 14, 2017, stating, "[W]e are only required to provide federal law. If you need state law books, you may have that information sent to you following the proper procedures."

¶ 12 As a second reason he was not to blame for the delay in filing his petition, defendant asserted in an attached affidavit that, initially, he believed counsel had filed an appeal and "assumed that it was just average delays causing me not to hear anything about it." He argued that, due to the combination of counsel's inaction and his lack of access to legal resources, his delay in filing a postconviction petition was inevitable.

¶ 13 On August 28, 2017, the circuit court docketed the petition for second-stage proceedings and appointed counsel to represent defendant.

¶ 14 On October 2, 2020, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), as well as a supplemental postconviction petition. Relevant here, in the supplemental petition, counsel reiterated the claim that trial counsel was ineffective when he disregarded defendant's instructions to file a motion to withdraw the guilty plea and a notice of appeal. Postconviction counsel asserted that, where trial counsel's ineffectiveness rendered appellate proceedings nonexistent, essentially denying defendant the right to an appeal, prejudice may be presumed.

¶ 15    On July 12, 2022, the State filed a motion to dismiss. The State argued, among other things, that defendant's claims were procedurally barred as untimely. On February 3, 2023, the circuit court granted the State's motion to dismiss. Defendant filed a timely notice of appeal.

¶ 16    On appeal, defendant contends that he made a substantial showing of a violation of his right to the effective assistance of counsel where trial counsel ignored his request to take the steps necessary to appeal his convictions.

¶ 17    The Act provides a three-stage process for adjudicating petitions alleging that a conviction resulted from a constitutional violation. 725 ILCS 5/122-1 *et seq.* (West 2016); *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). The instant case involves the second stage, where defendants are represented by counsel and the State may file a motion to dismiss. *Hodges*, 234 Ill. 2d at 10-11. At this stage, all factual allegations that are not positively rebutted by the record are accepted as true. *People v. Domagala*, 2013 IL 113688, ¶ 35. The dismissal of a petition is warranted if its allegations, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). In other words, a defendant is entitled to proceed to a third-stage evidentiary hearing on his petition only if the allegations therein, supported by the trial record and affidavits or exhibits, make a substantial showing of a violation of constitutional rights. *Id.* at 381. Our review at the second stage is *de novo*. *Id.* at 388-89. Pursuant to this standard, we review the trial court's judgment, not the reasons given for it. *People v. Jones*, 399 Ill. App. 3d 341, 359 (2010).

¶ 18    As an initial matter, we address the State's argument that dismissal of the petition was proper because it was untimely filed and defendant failed to establish a lack of culpable negligence for the late filing. Section 122-1(c) of the Act provides that, if a defendant does not file a direct

appeal, a postconviction petition "shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2016). Here, defendant pled guilty and was sentenced on March 7, 2013. Because he did not file a motion to withdraw the guilty plea or a direct appeal, he was required to file a postconviction petition by March 7, 2016. However, his *pro se* petition was not filed until July 28, 2017. Accordingly, we must determine whether defendant established that the delay was not due to his culpable negligence.

¶ 19     "Culpable negligence has been defined as '[n]egligent conduct that, while not intentional, involves a disregard of the consequences likely to result from one's actions.' " *People v. Boclair*, 202 Ill. 2d 89, 106 (2002) (quoting Black's Law Dictionary 1056 (7th ed. 1999)). It is "greater than ordinary negligence and is akin to recklessness." *Id.* at 108. A defendant alleging a lack of culpable negligence must support his assertion with "allegations of specific fact showing why his tardiness should be excused." *People v. Evans*, 2017 IL App (1st) 143268, ¶ 26. It is "very difficult" to show a lack of culpable negligence (*People v. Turner*, 337 Ill. App. 3d 80, 86 (2003)), and a defendant "bears a heavy burden to affirmatively show why the exception to the statute of limitations applies to his case" (*People v. Gunartt*, 327 Ill. App. 3d 550, 552 (2002)). Vague or conclusory assertions are insufficient. *Evans*, 2017 IL App (1st) 143268, ¶ 26.

¶ 20     Defendant acknowledges that his petition was over 16 months overdue. Nevertheless, he argues that he sufficiently alleged in his *pro se* petition that he was not culpably negligent for failing to file within the Act's three-year limitation period. He asserts that his petition included claims that he was unable to prepare a timely petition because he had been shuttled among numerous county, state, and federal correctional centers since his conviction; it was not uncommon

for inmates to lose legal documents while being transferred between facilities; the law library was rarely open at the Illinois prison where he spent the longest amount of time (*i.e.*, "about 7-9 months"); and, at the time he filed his petition, he was incarcerated in a federal facility that was not required to provide state-law materials. Defendant further claimed in his petition that he originally believed trial counsel had taken the necessary steps to file an appeal and the appeal was experiencing "just average delays." He maintains that the combination of his trust in his attorney and his inability to access legal materials shows he was not culpably negligent for the delay in filing his petition.

¶ 21   Even accepting defendant's claims as true, as we must at this second stage of proceedings (see *Domagala*, 2013 IL 113688, ¶ 35), we cannot agree that he made the requisite showing of sufficient factual allegations demonstrating he was not culpably negligent for filing beyond the limitations period detailed in the Act. See 725 ILCS 5/122-1(c) (West 2016). Defendant's claims are simply too vague to establish a lack of culpable negligence.

¶ 22   In his petition, defendant asserted that "until now," it had been impossible for him to access law libraries and conduct the necessary legal research to prepare a petition because he had been moved eleven times among six county, state, and federal correctional institutions. He attached a handwritten list of the eleven moves, with an estimate of how many weeks or months he had been housed at each facility. However, he provided no dates in this list and did not identify how the timing of any of the various stints in the different locations related to the statutory period in which he was required to file his petition. In addition, defendant indicated in his petition that his list included facilities where he had been incarcerated "since this matter began" and "before *** sentencing." As noted by the State, defendant's location and access to a law library prior to

sentencing on his guilty plea would be irrelevant to a determination of his culpable negligence in the filing of a postconviction petition.

¶ 23    Similarly, while defendant claimed that one facility's library was "rarely open" and another facility's library was "rarely accessible," he provided no details as to the dates when these libraries were closed or inaccessible beyond listing that he was housed at one of the facilities for "about 7-9 months" and at the other five separate times ranging from "2-3 weeks" to "7-9 weeks" both "before and after sentencing." Absent such information, it is impossible to determine whether he was denied access to the law libraries during the relevant statutory period.

¶ 24    Defendant also claimed that "it is not uncommon for an inmate to lose everything, including legal documents, while being transferred between institutions and jurisdictions." Importantly, defendant did not state that he himself lost any documents, much less any documents that were necessary for him to prepare a petition. Moreover, while he asserted that the federal facility where he was "presently housed 30 months" only provided federal case law in its law library, he did not email the legal department of that facility to request State law materials until June 14, 2017, a date well past his March 7, 2016, statutory filing deadline.

¶ 25    Finally, defendant claimed that he was not to blame for the delay in filing his petition because, initially, he believed counsel had filed an appeal and "assumed that it was just average delays causing me not to hear anything about it." Again, defendant has not identified when it was that he abandoned his original belief and came to the conclusion that trial counsel had not taken any steps toward perfecting an appeal. However, according to two affidavits from family members that he attached to his petition, defendant had thought for "many years" that trial counsel had not filed a direct appeal. Thus, it does not seem that trial counsel's failure to file a postplea motion or

notice of appeal was a recent discovery, and what little detail defendant has supplied on the topic cuts against his argument that his late filing was not due to his culpable negligence.

¶ 26    Defendant's claims lack the detail that is required to demonstrate a lack of culpable negligence. See, *e.g.*, *People v. Walker*, 331 Ill. App. 3d 335, 341-42 (2002) (the defendant's "bald assertion" that a lockdown prevented him from filing in a timely manner, without detailing when the lockdown occurred and whether it was during the applicable filing period, left the court "to speculate" whether the delay was "attributable solely or substantially" to the lockdown); *People v. McCaskill*, 2024 IL App (1st) 220366-U, ¶ 26 (absent specific facts detailing how long the defendant was separated from his legal documents and how this hindered his ability to file a timely petition, his allegation of lack of access to documents during transfers between facilities was insufficient to show a lack of culpable negligence); *People v. Leon*, 2022 IL App (1st) 191367-U, ¶¶ 41, 45 (finding a lack of detail to be "fatal" to the defendant's claim of a lack of culpable negligence where he provided no specifics as to the timing and duration of lockdowns that prevented access to the prison law library, the date when he began trying to access the library, or the date he began preparation of his petition); Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes). Where defendant failed to allege specific facts demonstrating that he was not culpably negligent for his untimely filing, the circuit court's dismissal of his petition was proper. See *Walker*, 331 Ill. App. 3d at 339-40, 341-42.

¶ 27    Anticipating our determination, defendant argues that we should find postconviction counsel was unreasonable for failing to provide additional, available facts to support a claim of a

lack of culpable negligence. Specifically, defendant asserts that counsel "could have, at the very least, provided documentation of the movements among facilities."

¶ 28 An attorney appointed to represent a defendant in postconviction proceedings must provide a "reasonable" level of assistance. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). To provide a reasonable level of assistance, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) provides that postconviction counsel shall (1) consult with the defendant, in person or by phone, mail, or electronic means, to ascertain his contentions of deprivation of constitutional rights; (2) examine the record of the proceedings at the trial; and (3) make any amendments to the *pro se* petition that are necessary for an adequate presentation of the defendant's contentions. Our supreme court has specifically recognized that:

> "Rule 651(c) requires counsel to amend an untimely *pro se* petition to allege any available facts necessary to establish that the delay was not due to the petitioner's culpable negligence. In discharging this duty, counsel must inquire of the petitioner whether there is any excuse for the delay in filing. As a practical matter, any potential excuse for the late filing will often be discovered by speaking with the petitioner. Counsel must also allege any excuse for the delay in filing apparent from the pleadings and the portions of the record counsel must review to present petitioner's claims." *People v. Perkins*, 229 Ill. 2d 34, 49-50 (2007).

¶ 29 The showing required by Rule 651(c) may be made by counsel's filing of a certificate, which raises a rebuttable presumption that counsel complied with Rule 651(c) and that the defendant received reasonable assistance of postconviction counsel. *People v. Smith*, 2022 IL 126940, ¶ 29. The burden is on the defendant to rebut the presumption (*People v. Huff*, 2024 IL

128492, ¶ 23) "by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)" (*People v. Profit*, 2012 IL App (1st) 101307, ¶ 19). We review *de novo* whether postconviction counsel substantially complied with Rule 651(c). *People v. Collins*, 2021 IL App (1st) 170597, ¶ 31.

¶ 30    Having carefully reviewed the record, we find that defendant has not overcome the presumption that counsel substantially complied with Rule 651(c).

¶ 31    The certificate that postconviction counsel filed in this case substantially tracks the express requirements of Rule 651(c), raising the rebuttable presumption that she complied with the rule and provided reasonable assistance. *Smith*, 2022 IL 126940, ¶ 29; *Profit*, 2012 IL App (1st) 101307, ¶ 19. In the certificate, counsel stated, *inter alia*, that she consulted with defendant personally to ascertain his contentions of deprivation of constitutional rights and that, after an "extensive teleconference" with him, was filing a supplemental petition. In that supplemental petition, counsel noted that, on January 22, 2014, defendant was "writ into Federal Court," and that, while he was technically in the custody of the Illinois Department of Corrections, he was physically serving his sentence in the federal facility. Counsel then presented substantive claims but did not address the issue of the untimeliness of the *pro se* petition. Further, the transcript of proceedings reveals that, in the year prior to her filing, postconviction counsel advised the court that she visited defendant and he raised "some issues," including one that required her to obtain a transcript.

¶ 32    Defendant raised the issue of timeliness in his *pro se* petition. As such, counsel was undoubtedly aware of not only the provision in the Act that excuses an untimely petition where the delay in filing is not due to the defendant's culpable negligence, but also defendant's stated

reasons for his delay, *i.e.*, his multiple moves among facilities and his initial belief that trial counsel had filed an appeal. The fact that postconviction counsel did not make any argument to show that defendant's delay in filing a petition was not due to his culpable negligence suggests that there were no "available facts" to meet that standard. See *Huff*, 2024 IL 128492, ¶ 24 (where postconviction counsel files a Rule 651(c) certificate, "[i]t is presumed from the lack of an amendment that there were none to be made"); see also *Leon*, 2022 IL App (1st) 191367-U, ¶ 60 (presuming, based upon counsel's certificate and statements in court regarding her communication with the defendant, that she asked him whether there were additional specific facts to explain why the delay in filing was not due to his culpable negligence and his answers were not helpful "or else they would have been incorporated into a supplemental petition"); *People v. Bernabe*, 2022 IL App (1st) 182475-U, ¶ 22 (counsel's failure to make an argument that delay was not due to the defendant's culpable negligence suggested no such facts were available); Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes).

¶ 33    In sum, counsel filed a Rule 651(c) certificate, raising the rebuttable presumption that she substantially complied with the Rule and that defendant received reasonable assistance of counsel, and defendant has failed to rebut that presumption. Where defendant's postconviction petition was untimely and he did not establish his lack of culpable negligence in the late filing, we decline to address whether the petition made a substantial showing of a constitutional deprivation. See *Perkins*, 229 Ill. 2d at 41 (finding that "[u]nder the Act, a petitioner's claims cannot be presented if they are untimely and the petitioner has not alleged facts showing the delay in filing was not due to his culpable negligence"); *People v. Ramirez*, 361 Ill. App. 3d 450, 455 (2005) ("Because we

hold that defendant's petition should have been dismissed as untimely, we do not reach his remaining contentions on appeal.").

¶ 34    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 35    Affirmed.